In the Matter of Natalie Ann **BOYER** and Melin'da June Boyer, dependent children under the age of 18 years.

No. 43740.

Supreme Court of Oklahoma.

Nov. 9, 1971.

Miskovsky, Sullivan, Embry & Miskovsky, Oklahoma City, for plaintiff in error, Jimmy W. Boyer.

(Mrs.) Arthur Lory Ragestraw, Oklahoma City, for defendant in error, Madeline Boyer.

BLACKBIRD, Justice.

This appeal involves the termination of a natural father's parental rights in relation to his two minor daughters. The father, Mr. Jimmy Boyer, and mother, Mrs. Madeline Boyer, were married in 1961, and their minor daughters, Natalie and Melinda were born in 1962 and 1963, respectively.

Thereafter, Mr. Boyer was paroled from the State Penitentiary in October, 1965, after serving a part of his one-year sentence pursuant to conviction for wife and child abandonment.

Thereafter, Mrs. Boyer was granted a decree of divorce on May 7, 1968. By said decree, she was awarded custody of the minors and child support for them at the rate of $30.00 per month each, commencing on June 1, 1968.

In July, 1968, the Children's Court made an order placing the minors in the temporary custody of the Department of Public Welfare pursuant to Mrs. Boyer's petition filed in that court alleging, among other things in brief substance, that Mr. Boyer had failed to contribute to the minors' support for approximately four years, that she was unemployed and financially unable to care for, nurture, and educate them, and that they were public dependents.

Approximately six months later, in 1969 (after the Children's Court had been incorporated into this State's District Court system by constitutional amendment), Mrs. Boyer filed in the same proceedings a writing in which she requested the court to terminate her parental rights in the minors and to place them in the above named Welfare Department for the purpose of finding them a suitable adoptive home and giving its consent to their adoption.

Thereafter, in April, 1969, Mrs. Boyer filed in the same proceedings an application to terminate Mr. Boyer's parental rights in the minors, alleging some of the above mentioned facts, and others, including the allegation that his failure to contribute to the children's support had been "for more than one year prior to the filing of this application * * *".

At the trial held the next month, both Mr. and Mrs. Boyer, hereinafter referred to as "respondent" and "applicant", respectively, appeared both in person and by their attorneys, and they, and a Mrs. F, Assistant Supervisor of the Oklahoma County Child Welfare Department, were the only witnesses testifying.

From respondent's testimony, it appeared, among other things, that during the approximate three-year period following his release from the penitentiary, he was employed at a salary of $60.00 per week, and that, since September, 1968, his "take home pay" from his present employment has been $121.50 per week. Before respondent finished testifying, he tendered the total sum of $360.00, which he stated he had been saving to contribute to the children's support, and asked that the application to terminate his parental rights be denied. He

also told the court it was his intention, if such denial occurred, to take appropriate court action for modification of the divorce court's decree concerning the children's custody.

At the close of the trial, the court entered judgment terminating the parental rights of both the respondent and the applicant, after rejecting respondent's tender of the $360.00 and referring to it as a "pitiful sum". In his oral remarks from the bench in pronouncing judgment, the court found there had been a sufficient showing of respondent's "gross and continued neglect of duty toward the children"—in addition to his failure to comply with the divorce decree's child support provisions—to authorize termination of his parental rights.

After the overruling of respondent's motion, and amended motion, for a new trial, he lodged the present appeal.

In support of his position that the trial court erred in its judgment terminating his parental rights, respondent says the matter is governed principally by the provisions of Title 10, O.S.1968 Supp., § 1130, and argues that, since the applicant had legal custody of the minors under the couple's divorce decree of May 7, 1968 (until they had been placed in the Public Welfare Department's temporary custody, as aforesaid), he could, at no time before the trial, have been "a parent who is entitled to custody of the child", within the meaning of that expression as it appears in subsection (c) of Section 1130, and, consequently, could not validly have been deprived of his parental rights on any of the grounds set forth in that subsection. He also argues that since the trial court's judgment was entered approximately one month less than a year after his first sixty-dollar payment was due under said divorce decree, the court's finding that he had not complied with its order for child support can furnish no valid ground for the challenged judgment terminating his parental rights.

██ In our opinion, it is unnecessary to discuss the latter argument because both the evidence and the court's findings, as clarified by his oral remarks from the bench, support termination of respondent's parental rights under Section 1130(c) (2), supra. There is no merit to respondent's argument that this cannot be done under that statutory provision, because he is not "a parent who is entitled to custody" of his minor daughters within the meaning of that provision's wording. The entitlement there spoken of refers, in a general way, to the initial and inherent right which, by nature, as well as historically and legally, a natural parent has always had to the custody of his or her children. In this connection, see Bishop v. Benear, 132 Okl. 116, 270 P. 569, 1st syl. One "who is entitled" to such custody, as the parent there described, means a parent who has not forfeited that right or lost it by a court order terminating it, under one of the Law's provisions preceding Section 1130, or any other law providing for the permanent dissolution of such right. As applicant's brief points out by example set forth therein, to interpret the questioned wording, as respondent urges, would not be consonant with the purpose of the Act, and, as inferred concerning a similar argument in Shumway v. Farley, 68 Ariz. 159, 203 P.2d 507, 512, would enable an errant father "to take advantage of his own wrong." Notice also Davis v. Neely, Okl., 387 P. 2d 494, quoting that case.

██ The testimony which respondent's brief refers to in attempting to show a justification for his failure to contribute to the minors' support is unconvincing; and we cannot say that it is of such weight and relevancy as to establish a valid excuse for his not contributing any significant measure of his daughters' "necessary support or education" before he was summoned into court by the present proceedings and then made his belated tender of $360.00. Respondent's conduct in this connection is reminiscent of the father's belated admission of error in In Re Adoption of Eddy, Okl., 487 P.2d 1362. Here, on the basis of the record, we can only conclude that the trial court, without erring or abusing his discretion, might, consistent with the decre-

tal part of his judgment, have found that respondent "although financially able, has wilfully neglected to provide" the minors "with the necessary support * * *" (on which ground termination of parental rights is authorized by Section 1130(c) (2), supra). Therefore, as the trial court's judgment cannot be said to be clearly against the weight of the evidence tending to show respondent's parental rights should have been terminated on that ground, we must, in accord with appellate rules of review (see Chaney v. Reddin, 201 Okl. 264, 205 P.2d 310, 8 A.L.R.2d 337; City of Tulsa v. Thomas, 89 Okl. 188, 214 P. 1070, and Mortgage Bond Co. v. Stephens, 181 Okl. 419, 74 P.2d 361), conclude also that it is not contrary to law, and affirm same, regardless of whether it was authorized by subsection (d) of said section.

Affirmed.

All the Justices concur.