In re T. H. L., J. R. L., S. L., B. L. and C. L., Alleged to be Deprived Children as Defined by the Laws of the State of Oklahoma.

Jimmy LANE and Vicki Lane, Appellants,

v.

STATE of Oklahoma, Appellee.

No. 55289.

Supreme Court of Oklahoma.

July 28, 1981.

As Corrected On Denial of Rehearing Nov. 23, 1981.

Charles E. Campbell, Stillwater, for appellants.

James C. Langley, Dist. Atty., Stephen R. Kistler, Asst. Dist. Atty., Stillwater, for appellee State.

Christopher D. Szlichta, Stillwater, for appellees Children.

OPALA, Justice:

In this appeal from an order terminating parental rights to the five children of the appellants—the natural parents—two issues are presented: [1] Was the order terminating the parental bond against the clear weight of the evidence? [2] Did the trial court commit reversible error in admitting improper evidence at the termination hearing? We answer both questions in the negative.

A petition to adjudicate the deprived status of five children and to extinguish their parents' rights to them was brought by the district attorney March 16, 1978.[1] The cause was reached for hearing March 27. The parents stipulated to the facts alleged and the children were found to stand in a deprived status. Custody was awarded to the Department of Human Services [Department] and the parents were ordered to seek counseling and professional guidance. Two status-review hearings were conducted in 1979, one in February and another in August. While at the close of the August hearing the children were placed with their parents to be kept there under court-specified conditions with custody remaining in the Department,[2] the district attorney declined to recede from his intention to seek termination of parental rights if by December the parents had not met the conditions set out in the August order.

In December a hearing was held on the application to terminate parental rights. The court allowed custody of the children to remain with the Department and their "placement" to continue with the parents. The order then specified fourteen separate conditions to be met.[3] At a hearing in

1. The petition, as amended, alleged that the five children—then 8, 7, 6, 5 and 4 years of age—were deprived because they were "not receiving proper parental care"; the home "by reason of neglect and depravity on the part of their parents is an unfit place"; the "children are in need of special care and treatment" and their "parents are either unable or wilfully failing to provide".

2. Three conditions were set out in the order placing custody in the parents:
(1) The parents and children are to seek counseling at the Payne County Guidance Center (twice a month) to consist of trying to improve family unity and harmony, management of financial affairs, management of children and other domestic affairs. (2) All five children are to be evaluated by a psychologist at the guidance center and have family therapy begin upon completion of the evaluations and (3) a social worker is to visit the home on a regular basis to monitor and assist the family with parenting skills, living conditions and occupational management.

3. The fourteen conditions set out in the December 1979 order are:
"1) Provide adequate shelter that is physically safe, adequately heated, has cooking facilities,

April of 1980—to determine if the conditions leading to the deprived-status adjudication had in fact been corrected—the parents, though represented by counsel, failed to appear. The case was tried in the parents' absence and culminated in a termination order. This decision was vacated a week later, upon the parents' motion, and a new hearing date was set for the purpose of affording the parents the opportunity to be heard. At the subsequent hearing the court found the parents had not complied with seven of the fourteen conditions and held that their parental rights should be terminated.[4] This appeal followed.

I.

■ The purpose of a termination proceeding is to sever the parental bond. The contest affects three distinct interests: (a) a parental claim to the child, (b) the state's responsibility to afford protection for underage citizenry and (c) the child's claim to a wholesome milieu free from harm of abuse and neglect. The interest of each party in this triology must be carefully weighed. The State's duty to the children within its jurisdiction must be balanced against the parents' natural and fundamental interest[5] in their custody and control. A parent may be deprived of this fundamental right if the court should determine that the child is "deprived"[6] and that severance of the parent-child relationship should be effected.

■ The child's best interest is presumably served by leaving him in the custody of his natural parents only if this can be done with a reasonable assurance that no abuse or neglect would follow.[7]

II.

The parents contend the judgment terminating their parental rights is unsupported by evidence. Their argument, in essence, is that they were in substantial compliance with the fourteen standards prescribed for their demeanor at the last status-review hearing. The district attorney and the children counter that the State's evidence, substantially uncontradicted and unrefuted by the parents, overwhelmingly supports a finding of noncompliance with the court-fashioned standards. The order of termination is therefore not against the clear weight of the evidence.

■ In cases of equitable cognizance a presumption of correctness favors the decree of the trial court. Unless found to be against the clear weight of the evidence, the decision made below will not be set

---

sufficient sleeping arrangements; 2) Accept nutritional instructions and prepare meals adequate to nurture the family; 3) Possess food stuffs sufficient for a family of seven and kitchen utensils to prepare and serve meals; 4) Accept and follow any advice of the Stillwater Fire Department in regards to the heating and cooking devices and dismanteling unused refrigerators; 5) Possess clothing (shoes, jeans, dresses, shirts, coats and underwear) appropriate for the season; 6) One or both parents maintain employment so that they can provide for the necessities for a family of seven; 7) Mr. Lane [father] attend weekly meetings at A. A. to control his drinking problem and provide proof of attendance to Court; 8) Provide Court with children's school attendance and grades; 9) Maintain a clean, safe, sanitary living condition for the home and yard; 10) Maintain adequate personal hygiene and grooming habits for parents and all children; 11) The parents assume responsibility to see that the children receive necessary medical, dental and eye care; 12) Provide adequate supervision of the chil-

dren both in home and neighborhood; 13) Parents and said children to continue therapy at the Payne County Guidance Center; 14) Regular home visits by a social worker shall be continued by a social worker to assist with parenting skills and living conditions."

4. The court found that the parents failed to comply with requirements 1, 5, 7, 9, 10, 11 and 12 which were set out in the December 1979 order, supra note 3.

5. *J. V. v. State, Dept. of Institutions, Social and Rehabilitative Services, et al*, Okl., 572 P.2d 1283, 1284 [1978]; *In re Boyer*, Okl., 490 P.2d 1076, 1078 [1971].

6. 10 O.S.Supp.1977, § 1101 et seq.

7. *Haralson v. Haralson*, Okl., 595 P.2d 443, 445 [1979]; *York v. Halley*, Okl., 534 P.2d 363, 365 [1975]; *In re Sweet*, Okl., 317 P.2d 231, 235 [1957]; *In re Boyer*, supra note 5.

aside.[8] In termination proceedings which follow a deprived-status adjudication, the burden is cast on the parents to show that the conditions leading up to that adjudication have been corrected.[9] The standards of parental care, fashioned as a result of the deprived-status proceeding, serve to identify those norms of acceptable conduct which are expected to be met by the parents vis-a-vis their child. Failure to meet them is a reliable indication that the risk attendant on nontermination may exceed the level of safety and hence warrant a judicial severance of the bond.

The standards set by the trial court in this case dealt with basic skills of parenting. No one disputes—and there can hardly be a question—that there was a rational connection between the fourteen court-fashioned standards which emerged from the deprived-status adjudication and what is commonly accepted as rudimentary parental fitness.

█ The parents were ordered to seek guidance counseling in remedying the causes of state intervention and to avoid termination of their parent-child relationship. Although reasonable attempts were shown to have been made by social workers to develop and encourage an improved milieu for the children, the parents failed to make substantial progress either because of unwillingness or lack of effort in adjusting their lifestyle to meet the prescribed needs of their children. Giving—as we must—due consideration to the parents' modest socio-economic status, we are nonetheless persuaded by the overwhelming proof in the record, viewed as a whole, that the parents had failed to provide the children with that minimum level of wholesome milieu—free from harm of abuse and neglect—which may be expected of persons in their station in life.

### III.

The parents contend that the trial court erred in admitting, over their timely objection, testimony of child abuse. They claim this evidence came as a surprise and deprived them of their due process right to notice and a meaningful opportunity to defend. Error is also urged in allowing the State to elicit testimony of certain delinquent acts committed by the children before the fourteen standards had been promulgated. We are urged that, although the deprived-status adjudication had been effected in May of 1978, the critical period during which the court was to consider whether the conditions leading to the deprived-status adjudication have been corrected is that which began in December 1979 when the fourteen conditions were first prescribed. We do not view these alleged errors as prejudicial in the context of this case.

█ The reason for prescribing conditions to be met upon the adjudication of a child's deprived status is to afford the parents an opportunity to rectify past parental abuse or neglect.[10] Implicit, if not explicit, in these conditions is the assumption that the parent was either unfit or derelict *qua* custodian. In the case at bar, the injection of the facts of child abuse—although it may be viewed as a "new" issue, i. e. unrelated to the standards prescribed—may not be asserted here as prejudicial error. *The State neither sought termination nor was one granted on that ground.* The court's decision rested solely on the parents' failure to show a change in the conditions upon which the children remained "placed" with them. There was no finding by the court of parental abuse. In any standard prescribed for parental conduct in pre-termination

**8.** *Price v. Price,* Okl., 573 P.2d 251, 254 [1978]; *In re Boyer,* Okl., 490 P.2d 1076, 1079 [1971]; *Matter of Ernst James C.,* Okl., 578 P.2d 352, 356 [1978]; *Matter of Krahn,* Okl., 569 P.2d 982, 984 [1977]; *Fessler v. Fariss,* Okl., 304 P.2d 332, 339 [1956]. After our decision *In the Matter of C. G.,* An Alleged Dependent and Neglected Child, 637 P.2d 66 [1981] parental bond termination decrees will now be reviewed by applying the clear-and-convincing proof standard.

**9.** *Matter of Christopher,* Okl., 577 P.2d 1292, 1293 [1978]; *Matter of Moore,* Okl., 558 P.2d 371, 373 [1976].

**10.** *Matter of Moore,* Okl., 558 P.2d 371, 373 [1976].

stages there is an implicit finding of a submarginal parental fitness either to continue as the present custodian or to recapture that status. Testimony which tends to show parental unfitness cannot constitute reversible error *per se* when, as here, the record demonstrates clearly that (a) the parents had been sufficiently and timely apprised of the norms to be met and (b) the parental bond severance rests on ample proof of failure to rectify the prescribed conditions.

■ Neither do we find prejudicial error in the admission of evidence as to the children's alleged involvement in certain delinquent acts occurring before the promulgation of the fourteen standards. This testimony was offered to show a pre-existing lack of parental supervision.

■ The interest of children in a wholesome environment has a constitutional dimension no less compelling than that the parents have in the preservation of family integrity. In the hierarchy of constitutionally protected values both interests rank as fundamental and must hence be shielded with equal vigor and solicitude.[11]

Affirmed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER and HARGRAVE, JJ., concur.

WILLIAMS, SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, dissenting.

I must respectfully dissent.

In affirming this termination order the majority has changed two major areas of our law: standard of proof and the substantive due process standard necessary to justify termination of parental rights.

Not only do I dissent to the result of this particular decision, but, even more importantly, I dissent to the changes in the law this decision compels. The majority apparently sees these changes as inconsequential as it does not bother to mention them. I see them as substantial and distressing. They are also unnecessary to support the result of this particular decision.

The majority poses the question: "Was the order terminating the parental bond against the weight of the evidence?" It then proceeds to the conclusion that the order of termination "is therefore not against the clear weight of the evidence." It is submitted the majority, by use of a "weight of the evidence" test measures the evidence in this cause by a two foot yardstick.

Review of the transcript of evidence in this case clearly establishes the State assumed the burden of proving that parental rights should be terminated. This is as it should be, in view of the fact that it relied primarily upon evidence supporting an adjudication of dependency and neglect.

In fact, this evidence was reviewed by the trial court in the absence of the natural parents. Although the court subsequently vacated the termination order on motion of the parties, the judge "permitted" the natural parents, who lack any type of formal education, to listen to tape recordings of the evidence at the initial termination hearing and then inquired of them if they had evidence to rebut what was recorded on the tapes. The trial court, as the majority points out, found the parents had met seven of fourteen conditions prescribed following an adjudication of the children as deprived, but had not yet fulfilled their obligation in seven other judicially imposed requirements of conduct.

The question is not whether the "weight of the evidence" favors termination by the state, but rather, whether or not the State demonstrated by "clear and convincing evidence" that parental rights should be involuntarily terminated.

---

11. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 [1969]; *Bellotti v. Baird*, 443 U.S. 662, 99 S.Ct. 3035, 61 L.Ed.2d 797 [1979]; *Parham v. J. R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 [1979]; Developments in the Law; The Constitution and the Family, 93 Harvard L.R. 1157, 1358 [1980].

Less than one year ago, this Court in the case of *Adoption of Darren Todd H., Okl., 615 P.2d 287 (1980)*, addressed the precise issue of the standard of proof necessary to terminate the rights of a natural father as predicatory to an adoption proceeding. We recognized there that adopting a standard of proof was more than an "empty semantic exercise" (at 290). Based to a large extent on the rationale of the United States Supreme Court's decision in *Addington v. Texas*[1], we held that a "weight of the evidence" test is inadequate for cases involving parental rights, and, we adopted the standard of "clear and convincing" proof.

The following from that decision is particularly relevant here:

"We have repeatedly recognized that the right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the federal and state constitutions. See, e. g., *J. V. v. State, Dept. of Institutions, Soc. and Rehab. Services, Okl., 572 P.2d 1283 (1977)*. The fundamental nature of parental rights 'requires that the full panoply of procedural safeguards must be applied' before a parent may be deprived of that right. *Matter of Chad S., Okl., 580 P.2d 983, 985 (1978)*. Assessing this situation under the rationale of *Addington*, we are convinced that because a declaration of a child's eligibility for adoption without parental consent effects a termination of parental rights, the magnitude of the rights involved requires proof which is clear and convincing. We adopt that standard of proof prospectively and overrule previous holdings to the contrary." At 290.

The majority opinion also obscures the change it makes in our law regarding the fundamental rights of parent and child. The majority holds "that the parties had failed to provide the children with that minimum level of wholesome milieu which may be expected of persons in their station in life." Thus the majority concludes the parental rights must, and may, be terminat-

ed. Providing "minimum levels of wholesome milieu" is a test unrecognized in Oklahoma. It is unrecognized anywhere. I don't know what it means and I'm sure that trial judges, parents and law enforcement personnel won't know either.

Recognizing the constitutional importance of the interests placed in jeopardy in a termination hearing, this Court adopted in *Matter of Sherol A. S.;*[2] the substantive due process standard necessary to justify a termination proceeding. That requisite state interest is "HARM . . . actual or imminent" to children.

The majority has turned its back on this standard of harm and adopted in its place a "wholesome milieu" test.

I dissent.

I am authorized to state that Justice DOOLIN joins me in this Dissent.

---

1. 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

