250 P.3d 343 (2011)
2011 OK CIV APP 27
In the Matter of the State of Oklahoma in the Interest of A.W. and M.W., Minor Children:
Shannon Wilson, Natural Mother, Plaintiff/Appellant,
v.
State of Oklahoma, Defendant/Appellee.
No. 107,390. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 2.
Court of Civil Appeals of Oklahoma, Division No. 2.
January 28, 2011.
*345 N. Blaine Frierson, Frierson Law Office, Tulsa, OK, for Plaintiff/Appellant.
Kathy S. Lahmeyer, Assistant District Attorney, Claremore, OK, for Defendant/Appellee.
JOHN F. FISCHER, Judge.
¶ 1 Shannon Wilson (Mother) appeals the district court's termination of parental rights to her two minor children, M.W. and A.W. On review of the record and applicable law, we affirm the district court's termination.

BACKGROUND
¶ 2 The minor children were taken into custody by the State of Oklahoma in August 2006. The State filed a petition to have the children adjudicated deprived, based on allegations that the Mother left the children unattended in a vehicle "for approximately 20-25 minutes" in a casino parking lot while she went inside to get "free five dollars to buy cigarettes and milk," and that Mother "did not see any problem with" this. The petition alleged that the older child, A.W., who was nine years of age at the time, was left to watch the younger child, M.W., "on several occasions," was "left to be a caretaker" of the younger child, and that Mother did not work and received "disability due to her MS disease."
¶ 3 The petition further alleged Mother resided with the biological father's cousin, that they fought, drank beer, and took illegal drugs in the presence of the minor children. The biological father's cousin was on probation and "could be facing thirty years in prison." The biological father, Kevin Wilson, was incarcerated at the time the petition was filed.[1] The petition alleged "a history of domestic violence between the parents in the presence of the minor children," and that the Father's "criminal history includes but is not limited to DUI, Possession of Controlled Drugs, Sexual Abuse of a Minor child, Assault and Battery upon a police officer." The State sought adjudication of deprived status of the minor children based on these allegations, and because "the parents of child[ren] have failed to provide a safe and appropriate home, shelter or environment, supervision, care, support, and general necessities for the proper care and maintenance of the child[ren]," and requested that the parents, having "adequate means of support," be ordered to pay child support. Mother stipulated to the petition, and the children were adjudicated deprived in November 2006 and placed in foster care.[2]
¶ 4 The district court entered a treatment plan in January 2007, stating the conditions that needed to be corrected and the desired results of the treatment plan. The conditions to be corrected included: protection of the children "by proper supervision, and avoidance of harmful influences in role models and substances," providing children with "a safe and appropriate home with utilities," appropriate parenting skills to meet the children's needs, provision of medical and dental care, and strengthening of a support system to "include adequate resources for parenting." Mother received weekly visitation with the minor children. From January 2007 to April 2008, the State sought reunification as a permanency plan. In April 2008, State first recommended that "reunification should no longer be the goal." This was due to Mother's "repeated, unsuccessful attempts at interaction with the children; the children's own desires not to return to their mother's home ...; and the numerous reports by several previous therapists regarding this mother's inability to grasp developmental changes in her children...." State further recommended that visitations with A.W. be suspended because A.W. felt disconnected *346 and uncomfortable with Mother. Both children expressed a desire to therapists and case workers to no longer live with Mother.
¶ 5 In May 2008, the attorney for the minor children filed a joint motion with the State to terminate parental rights based on 10 O.S.2001 section 7003-4.7 et seq., and 10 O.S. sections 7006-1.1(A)(5), (7), (15) and the Oklahoma Children's Code. The motion alleged Mother had "failed to correct the conditions leading to the minor children being adjudicated deprived," including: Mother had "failed to pay child support consistently and is in arrears," that despite completion of parenting classes Mother could not "demonstrate adequate parenting skills and decision making on behalf of the minor children," that Mother lacked "consistent monetary means to support herself and the minor children during the duration of the case," and Mother's failure "to provide appropriate documentation to the DHS worker regarding her physical disability, treatment plan and limitations."
¶ 6 A jury trial was conducted between May 7 and July 1, 2009. The jury returned a verdict finding "clear and convincing evidence" in favor of termination of parental rights to both children, based on the following statutory grounds:
1. The condition which lead [sic] to this child being adjudicated deprived has not been corrected, the condition being neglect.[3]
2. [Mother] has willfully, failed, refused, or neglected to substantially contribute to the support of the child within twelve of the last fourteen months.
3. The child has been in foster care for fifteen of the most recent twenty-two months and it's in the child's best interest to do so.
The district judge entered an order July 8, 2009, terminating Mother's parental rights to the two minor children based on the July 1, 2009, jury verdict. Mother appeals the order, alleging violation of her due process rights because "she was not informed as to the conditions that needed correcting" in order for reunification to occur, that she had "completed all of the requirements as requested" in the treatment plans, and failure to give her notice of any deficiencies was a violation of her rights. Mother further alleges she had changed the conditions that led to the initial adjudication of the children as deprived, by complying with her treatment plans. Additionally, Mother alleges that failure to put her on notice of a narcissistic personality disorder, to which one of State's witnesses testified at trial, violated her due process rights because she was not given an opportunity to treat the disorder.[4]

STANDARD OF REVIEW
¶ 7 The standard of review in an action to terminate parental rights is whether the district court's "findings rest on clear-and-convincing proof." In re S.B.C., 2002 OK 83, ¶¶ 5-6, 64 P.3d 1080, 1081-82 (emphasis omitted) (citing Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982)). This "heightened test that is accorded fundamental rights" must be applied before the "state may sever the rights of parents in their natural child...." Id. ¶¶ 5, 7, 64 P.3d at 1082. On review, we apply the same standard used in the district court. Id. ¶ 7, 64 P.3d at 1082. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established." In re C.G., 1981 OK 131, ¶ 17 n. 12, 637 P.2d 66, 71 n. 12.
¶ 8 Due process requires notice that reasonably informs a parent that a "legally-protected interest may be adversely affected." Id. ¶ 9, 637 P.2d at 68. "Any parent whose child is adjudged to occupy a legal status termed `deprived' must be judicially advised of those parental conduct norms *347 which he is expected to follow or eschew to recapture a legally unencumbered standing as a parent." Id. When the state moves to terminate parental rights, "it must provide the parents with fundamentally fair procedures." Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982) (cited as controlling in In re C.G., 1981 OK 131, 637 P.2d 66). "In passing upon a claim that the procedure used in a proceeding to terminate parental rights resulted in a denial of procedural due process, we review the issue de novo. De novo review requires an independent, non-deferential re-examination of another tribunal's legal rulings." In re A.M. & R.W., 2000 OK 82, ¶ 6, 13 P.3d 484, 487 (citations omitted).

ANALYSIS

I. Sufficiency of the Evidence
¶ 9 On appeal Mother claims the State did not produce clear and convincing evidence that she failed to correct the conditions that led to adjudication of the children as deprived.
Pursuant to the provisions of the Oklahoma Children's Code ... a court may terminate the rights of a parent to a child in the following situations; provided, however, the paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child:
....
5. A finding that:
a. the child has been adjudicated to be deprived, and
b. such condition is caused by or contributed to by acts or omissions of the parent, and
c. termination of parental rights is in the best interests of the child, and
d. the parent has failed to show that the condition which led to the adjudication of a child deprived has been corrected although the parent has been given not less than the time specified by Section 7003-5.5 of this title to correct the condition.
10 O.S.2001 § 7006-1.1(A)(5).[5]
¶ 10 Therefore, the State must demonstrate by clear and convincing evidence that Mother failed to correct the conditions that led to the initial deprived adjudication, and that termination of parental rights is in the best interests of the children. See In re S.B.C., 2002 OK 83, ¶¶ 5-6, 64 P.3d 1080, 1081-82; 10 O.S.2001 § 7006-1.1(A)(5). The standard in termination proceedings is not whether the parent complied with the treatment plan, but whether "the conditions leading to the deprived adjudication" have been corrected. In re S.A., 2007 OK CIV APP 97, ¶ 19, 169 P.3d 730, 736. The treatment plan is implemented "to help parents correct [those] conditions." Id. "In all termination cases ... the paramount concern is the health, safety, welfare, and best interests of the children." Id.
¶ 11 At trial, State introduced as evidence DHS and CASA reports, as well as testimony from caseworkers, therapists, and the foster *348 mother. In general, caseworkers Barbara Priest and Melissa Vanderhoof, and CASA worker Sharon Woodard, testified that based on their observations of Mother's interaction with the children, she had repeatedly failed to correct the conditions resulting in the adjudication of the children as deprived, despite substantial compliance with the requirements of her treatment plans. Michelle Rosdahl and Bobby Smith, therapists who worked with the children, testified as to the children's desire for stability and permanency and to no longer live with Mother.
¶ 12 Caseworker Melissa Vanderhoof testified that Mother "cannot or has not been able to show appropriate interaction and an ability to have comprehended what she learned and implemented ... through her classes," that it would not serve the best interests of the children to remain in foster care any longer, and that termination was in their best interests.
¶ 13 The children's therapist, Michelle Rosdahl, testified that the children felt "safe and secure in their environment over [the] last two and a half years," that "they have moved on" and "are doing very well," and that if they went back to Mother it "would be detrimental to them."
¶ 14 CASA worker Sharon Woodard testified that she had concerns about Mother's parenting skills and the children's medical issues, specifically the younger child's MRSA condition and Mother's ability to monitor it, as well as Mother's failure to get treatment for her own MS condition in the eight years prior to the children being taken into custody. Mother maintains that her MS is asymptomatic, although she had an episode of MS after the children were taken into custody that required treatment, and a report entered into evidence by Dr. Wade, who examined Mother for her MS, recommended that Mother "see a psychiatrist to improve her orientation toward her disease."
¶ 15 Sharon Woodard further testified as to two unannounced visits with Mother when she found men staying in Mother's home, although Mother contested this. Additionally, A.W.'s testimony at trial was that both A.W. and M.W. no longer wished to live with Mother. A.W. expressed concerns that the conditions with Mother had not changed, that Mother "lied in therapy," and that the children would get taken into custody again.
¶ 16 Wilma Erickson, foster mother, testified that when the children came into custody they had very bad head lice, were dirty, had dirty clothes and "no shoes on." Erickson further testified that when she took the children to the doctor she discovered that the younger child, M.W., had MRSA, that both children said M.W. had the condition prior to entering custody, although Mother denies this, and that it required treatment and constant supervision.
¶ 17 Also entered into evidence was a psychological evaluation ordered by the State and administered by Dr. Van Nostrand. His report expresses concerns about Mother's "unwillingness to admit even minor flaws," her "outright effort to deceive others about motives or adjustments," and that Mother's "ability to protect the children with proactive thought processes is lacking at this time." The report states Mother "lacks the capability of being a responsible parent," that it is "doubtful" that she "can acquire the needed skills to be a responsible parent," and that although "[t]echnically [Mother] can fulfill the treatment plan goals ... whether she will integrate and rely upon those learned skills for the future is questionable at this time."
¶ 18 Mother introduced evidence that she had complied substantially with the requirements of her treatment plan, including maintaining a residence suitable for the children, getting a job, and taking the classes required by the plan that included parenting and nutrition classes. However, compliance with the treatment plan alone does not demonstrate that the conditions have changed. In re K.C., 2002 OK CIV APP 58, ¶ 7, 46 P.3d 1289, 1291-92 ("`The test ... is not whether [the parent] completed the plan but whether [the parent] corrected the conditions which led to the adjudication.'") (quoting In re A.G. and E.G., 2000 OK CIV APP 12, ¶ 6, 996 P.2d 494, 497) (alteration in original).
¶ 19 Mother's only witness at trial other than herself was her counselor, Mark Turner, who never had any interaction with the *349 children in this case and did not have the opportunity to observe Mother interacting with the children. Mother's argument on appeal is that she substantially completed the requirements of the treatment plan and therefore termination is not appropriate. However, as stated previously, compliance with the requirements of the plan is not itself indicative of a change in conditions. Further, although Mother disputes some of the evidence offered by the State, questions as to credibility of witnesses are for the jury to resolve. See Higginbotham v. Hartman, 1970 OK 25, ¶ 7, 465 P.2d 478, 479 ("The jury may accept or reject such testimony as they see fit, and the presumption favors the correctness of the verdict rendered."); Video Indep. Theatres, Inc. v. Cooper, 1966 OK 219, ¶ 10, 421 P.2d 833, 835 ("This court in reviewing a judgment entered upon jury's verdict must presume that the jury accepted as true the evidence which supports [the] verdict."). We find clear and convincing evidence in the record that demonstrates Mother has not corrected the conditions which led to the children's adjudication as deprived and that termination is in the best interests of the children.
¶ 20 We note that the State's argument on appeal, that once the children have been adjudicated deprived "the burden then shifts to the parent to show conditions have been corrected since the deprived adjudication," misperceives the burden of proof in termination proceedings. The burden is on the State to prove by clear and convincing evidence the statutory requirements for termination, including that termination is in the best interests of the children. See In re S.B.C., 2002 OK 83, ¶¶ 5-6, 64 P.3d 1080, 1082; Santosky, 455 U.S. at 769, 102 S.Ct. at 1403. We agree with the committee comments to Instruction number 3.4 of the Oklahoma Uniform Jury Instructions-Juvenile, that placing "the burden of persuasion on the parent would raise constitutional issues for the reasons that the United States Supreme Court articulated in Santosky. See 455 U.S. at 758-69, 102 S.Ct. 1388." In termination proceedings the State carries the burden of proof, although the parent does have the obligation to come forward with evidence to show conditions have changed once the State has provided evidence that they have not. See In re J.M., 1993 OK CIV APP 121, ¶ 4, 858 P.2d 118, 120. Although we find sufficient evidence in the record to support termination, we reject this argument by the State on constitutional grounds.

II. Mother's Due Process Rights
¶ 21 Mother also argues that termination violates her due process rights because she was not put on notice of the conditions that needed to be changed in order to prevent termination.
¶ 22 In termination proceedings we balance "the parents' fundamental freedom from family disruption with the state's duty to protect children within its borders." In re C.G., 1981 OK 131, ¶ 17, 637 P.2d 66, 70. Although parents have a "fundamental liberty interest ... in the care, custody, and management of their child," this interest is not absolute, and must be balanced against "[t]he interest of children in a wholesome environment," and "both interests rank as fundamental...." In re J.C. and J.C., 2007 OK CIV APP 77, ¶¶ 4-5, 168 P.3d 784, 785 (citing Santosky, 455 U.S. at 753-54, 102 S.Ct. at 1394-95; In re T.H.L., 1981 OK 103, ¶ 13, 636 P.2d 330, 334). And, "the paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child." 10 O.S.2001 § 7006-1.1(A) (amended by Laws 2009, HB 2028, ch. 233, § 263, emerg. eff. May 21, 2009). Because parents have a constitutionally protected liberty interest in the legal bond with their children, we analyze a due process challenge to determine the procedural protections required before that bond can be broken. See In re A.M. & R.W., ¶¶ 8-9, 13 P.3d at 487 (applying the test enunciated in Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976)). "In the context of a proceeding to terminate parental rights, the essence of procedural due process is a `meaningful and fair opportunity to defend.' This includes a reasonable opportunity to confront and cross-examine witnesses." Id. ¶ 9, 13 P.3d at 487 (citations omitted).
*350 ¶ 23 Mother is correct that before her parental rights may be terminated she must be afforded "an opportunity to ameliorate" the condition that led to the children's adjudication as deprived. See In re C.G., ¶ 9, 637 P.2d at 68. This means Mother must have been put on notice of the conditions that she needed to correct. Additionally, "notice cannot depend on inferences to be gathered from reports of social workers or of medical doctors," but "can only be found in written judicially-prescribed norms of conduct to which the parent is expected to conform." Id., 637 P.2d at 68-69. Mother relies on In re C.G. to make her argument. However, the facts of that case are sufficiently distinguishable from the facts at hand to make her argument unpersuasive. In C.G., the Court found the record to be "utterly devoid of any judicially-prescribed norms of conduct to which the" parent needed to conform to prevent termination. See id. ¶ 11, 637 P.2d at 69.
¶ 24 In this case the State made extensive efforts to aid Mother in correcting the conditions that led to the children's adjudication as deprived. State introduced into evidence treatment plans beginning in January 2007 up until the time of trial that set forth the conditions that needed correcting. The State actively worked with Mother towards reunification until April 2008. At the time of trial the children had been in custody 32 months. Although the presumption is "that a child's best interests lie in preserving family integrity," this may be overcome by a showing of "clear and convincing evidence" of "the potential for parental harm to the child," and "that termination of parental rights is in the best interests of the child." In re K.C., 2002 OK CIV APP 58, ¶ 5, 46 P.3d 1289, 1291 (citing In re C.G., ¶ 17, 637 P.2d at 71; In re J.M., ¶ 4, 858 P.2d at 120).
¶ 25 Specifically, Mother points to State's witness Bobby Smith, who testified that Mother had a narcissistic personality disorder that prevented her from implementing the behaviors she learned in her parenting classes. Mother claims it was a denial of her due process rights to base termination on an alleged personality disorder, because she was not given notice that this was a condition that needed correcting prior to filing the motion to terminate.
¶ 26 State counters that any alleged personality disorder was not the basis for the filing of the motion to terminate, and that it did not rely on this evidence in meeting its burden of proof. At trial, State put on testimony of two caseworkers, the CASA worker, the foster mother, and the therapists who had worked with the children and Mother. State's witnesses testified to the effect that in the interactions they observed between Mother and the children, Mother failed to implement the parenting skills she had learned. The witnesses additionally testified as to the children's desire to no longer live with Mother, including the testimony of A.W. Bobby Smith was the only witness to testify that he believed Mother had a personality disorder. State did not allege any such disorder in the petition or the motion to terminate, nor does it do so on appeal.
¶ 27 We find Mother's argument unpersuasive. First, Mother failed to preserve this issue for appeal by not objecting to the witness' testimony at trial. See 12 O.S.2001 § 2104. "[A] party who fails to preserve an issue for appeal by objecting in a timely manner to testimony or issues before the trial court ... has waived review of that issue in this court." Bane v. Anderson, Bryant & Co., 1989 OK 140, ¶ 24, 786 P.2d 1230, 1236. See Parris v. McCallay, 1967 OK 40, ¶ 15, 424 P.2d 62, 67.
¶ 28 Further, State put on extensive evidence at trial that Mother failed to correct the conditions of which she had notice, and this failure to correct the conditions was not attributed to a personality disorder by anyone other than one of State's witnesses. State does not allege that Mother has any personality disorder, and does not seek termination on this basis.
¶ 29 We find that Mother had sufficient notice of the conditions that needed correcting to prevent termination. Mother stipulated to the petition adjudicating the children deprived, and was given notice of specific conditions that needed correcting from her treatment plans beginning in January 2007. The evidence introduced at trial, including testimony of State's witnesses, and the DHS and CASA reports filed in this case, demonstrates that Mother was given notice of the conditions that needed correcting and extensive time to correct these conditions.
*351 ¶ 30 Mother was afforded notice of the proceedings, in addition to notice of the conditions that needed correcting to avoid termination. She was afforded an opportunity to be heard at a jury trial. The record clearly demonstrates that Mother actively participated in this case, cross-examined the State's witnesses, introduced her own evidence and was effectively represented by counsel throughout this proceeding. Mother has failed to demonstrate any procedural deficiency in the proceedings to terminate her parental rights to A.W. and M.W. Therefore we find Mother's due process argument unpersuasive.

CONCLUSION
¶ 31 The record demonstrates that the State produced clear and convincing evidence that Mother failed to correct the conditions that led to the adjudication of the children as deprived, despite being given notice of these conditions and time to correct them. Mother was afforded adequate due process in this case. Mother has failed to correct the conditions and it is in the best interests of the children that parental rights be terminated.
¶ 32 AFFIRMED.
BARNES, P.J., and WISEMAN, J., concur.
NOTES
[1] Father was originally named along with Mother in the motion to terminate. Father was dismissed from this proceeding for failure to timely serve him with notice. The motion was amended to seek termination of only Mother's parental rights.
[2] Mother was charged with felony neglect based on the incident in the parking lot. She pled guilty to the offense and was sentenced to sixty days in jail and a $500 fine.
[3] The Oklahoma Uniform Jury Instruction-Juvenile number 2.7 defines neglect as: "failure or omission to provide adequate food, clothing, shelter, medical care, and supervision...."
[4] Mother also alleges that the jury finding that she failed to contribute substantially to child support was not supported by the evidence. Because we affirm the district court based on the first finding of the jury, it is not necessary to address this argument.
[5] Amended by Laws 2009, HB 2028, ch. 233, § 263, emerg. eff. May 21, 2009, renumbered as 10A O.S. § 1-4-904. This amendment went into effect after the jury trial in this case began. Article 5, section 54 of the Oklahoma Constitution provides that "repeal of a statute shall not... affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute." "The quoted provisions of our fundamental law protect from legislative extinguishment... `proceedings begun' under a repealed or amended statute. The term `proceedings begun' refers to essential steps or measures to invoke, establish or vindicate a right." First Nat'l Bank of Pauls Valley v. Crudup, 1982 OK 132, ¶ 5, 656 P.2d 914, 916. Any "proceedings begun by virtue of such repealed statute ... shall be by the court retained, and pass to judgment unaffected by the repealing act so far as the proceedings are concerned." State ex rel. Osage County S. & L. Ass'n v. Worten, 1933 OK 545, ¶ 6, 29 P.2d 1, 2 (quoting State ex rel. Attorney Gen. v. McCafferty County Treasurer, 1909 OK 291, ¶ 23, 105 P. 992, 996). We find that the changes in the law do not affect the proceedings in this case, for the reasons cited above. Further, we affirm the jury verdict based on the finding that conditions have not changed, a ground for termination available under both the superceded and the amended version of the statute. See 10A O.S. Supp.2009 § 1-4-904(A), (B)(5) (amending 10 O.S.2001 § 7006-1.1(A)(5)). Neither party raises this issue on appeal, and we address it only to note that we find no fundamental error in the district court's instruction of the jury based on the law in effect at the time the trial proceedings began.