IN THE MATTER OF J.C.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF J.C.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF J.C.
2018 OK CIV APP 32
Case Number: 116322
Decided: 03/19/2018
Mandate Issued: 04/18/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 32, __ P.3d __

 


IN THE MATTER OF J.C., J.D., and W.D., Alleged Deprived Children:
TYLOR CLARK, Appellant,
v.
STATE OF OKLAHOMA, Appellee.

APPEAL FROM THE DISTRICT COURT OF
CREEK COUNTY, OKLAHOMA
HONORABLE MARK A. IHRIG, TRIAL JUDGE

VACATED AND REMANDED FOR FURTHER PROCEEDINGS

Timothy J. Gifford, LAW OFFICE OF TIMOTHY J. GIFFORD, Tulsa, Oklahoma, for Appellant
Max Cook, DISTRICT ATTORNEY, Kelly Allen, ASSISTANT DISTRICT ATTORNEY, Sapulpa, Oklahoma, for Appellee


P. THOMAS THORNBRUGH, CHIEF JUDGE:
¶1 Appellant, Tylor Clark (Father), appeals from an order adjudicating as deprived Father's biological child, J.C. (Child), after the trial court denied Father's request for a trial in response to the State of Oklahoma's (State's) petition for an adjudication of Child as deprived on multiple grounds, to which Child's biological mother (Mother) stipulated. For the reasons enumerated below, we vacate that part of the trial court's order adjudicating Child as deprived and remand for a non-jury trial, on the question of whether Child is deprived, compliant with the requirements of the Indian Child Welfare Act.
BACKGROUND
¶2 The record reflects that the Department of Human Services (DHS) took Child and two of Child's half-siblings, J.D. and W.D. (collectively, Children), into protective custody on May 8, 2017, after Mother and J.D. and W.D.'s purported father, Joshua Driever, were arrested for alleged possession and being under the influence of methamphetamines and for child endangerment. At that time, Child was age 9, while J.D. and W.D. were ages 5 and 4, respectively. It is not disputed that Mother and Father were married when Child was born but were divorced at the time Children were taken into custody.
¶3 On May 16, 2017, State filed a petition to adjudicate all three Children as deprived, listing Father as a defendant along with Mother and Driever. The petition described the circumstances under which Children had been taken into custody, including Mother and Driever's admission that they had used and/or possessed illegal drugs and drug paraphernalia. The allegations specifically pertaining to Father were (1) that he "has been diagnosed with Bipolar Disorder but is not currently taking any medications"; (2) that Mother and Father had a "domestically violent relationship"; (3) that Father had a "criminal history for domestic assault and battery" based on a 2010 misdemeanor charge and a 2010 protective order; and (4) that Father had failed to protect Child from the "deprivations" listed in the petition. State alleged the conditions constituted "neglect, failure to provide a safe and stable home, failure to protect, and domestic violence and inadequate supervision," and requested the court to adjudicate J.C. "to be deprived by [Father]." In a separate paragraph State requested that all three Children be adjudicated deprived as to Mother and Driever, but in addition listed the conditions of "substance abuse" and "threat of harm" as grounds for the adjudication.
¶4 At the adjudication hearing on July 5, 2017, Mother stipulated to the allegations of State's petition and to Child's deprived status. Father, however, objected to the adjudication and requested a non-jury trial on the question of whether Child should be adjudicated deprived. The court at that time denied Father's request, noting that it had long followed a rule set down in a Court of Civil Appeals case -- the citation of which the judge could not recall but with which he agreed -- that "the status of being a deprived child . . . belongs to the child, not to the parent." Therefore, the court found that because Mother had stipulated to Child's deprived status there was no need for a trial on State's allegations against Father.
¶5 On July 20, 2017, the Cherokee Nation filed a Notice to Intervene, stating that Children are "Indian children" within the meaning of the Indian Child Welfare Act, 25 U.S.C. § 1903(4), and that the Nation intended to be involved with the case.[1] On July 26, the trial court entered a written order finding that the Indian Child Welfare Act applied and memorializing Children's adjudication as deprived based on "[s]tipulation of the Mother . . . that continued custody of [Child] by the parent or Indian custodian is likely to result in serious emotional or physical damage or harm to the [Child]." The order further recited that the court had denied Father's request for a non-jury trial and had overruled Father's objection to the adjudication of Child as deprived.[2] In addition, over Father's objection the court ordered an Individualized Service Plan (ISP) for all parents, and described the following conditions as having caused Children to be adjudicated deprived: possessing/using illegal drugs/addiction; domestic violence; failure to maintain safe and/or sanitary home; threat of harm; neglect; and inadequate supervision. Children were declared wards of the State and have been placed in foster care.[3]
¶6 Father filed this appeal. His sole proposition of error is that the trial court denied his constitutional right of due process by refusing his request for a non-jury trial on the issue of whether Child is deprived.
STANDARD OF REVIEW
¶7 This Court reviews de novo a claim that the procedure used in a deprived child action resulted in a denial of procedural due process. In re A.M., 2000 OK 82, ¶ 6, 13 P.3d 484. Statutory construction, a question of law, also is reviewed de novo. In re Adoption of Baby Boy A, 2010 OK 39, ¶ 20, 236 P.3d 116.
ANALYSIS
¶8 Adjudication proceedings in Oklahoma are governed by 10A O.S.2011 §§ 1-4-601 through 1-4-603. If an Indian child is involved -- as in this case --both the federal Indian Child Welfare Act, 25 U.S.C. §§ 1911 through 1923, and its Oklahoma counterpart, 10 O.S.2011 §§ 40 through 40.9 (collectively ICWA), apply. The ICWA requirements apply even if the Indian child is not "in the physical or legal custody of an Indian parent" when a state proceeding is initiated. In re Baby Boy L., 2004 OK 93, ¶ 18, 103 P.3d 1099 (quoting 10 O.S.2011 §§ 40.1 and 40.3).
¶9 Title 10A O.S.2011 § 1-4-601(D) provides that, at the hearing to determine whether a child should be adjudicated deprived, the court shall:
1. Accept a stipulation by the child's parent, guardian, or other legal custodian that the facts alleged in the petition are true and correct;
2. Accept a stipulation by the child's parent, guardian, or other legal custodian that if the state presented its evidence supporting the truth of the factual allegations in the petition to a court of competent jurisdiction, such evidence would be sufficient to meet the state's burden of proving by a preponderance of the evidence that the factual allegations are true and correct; 
3. Conduct a nonjury trial to determine whether the state has met its burden of proving by a preponderance of the evidence that the factual allegations in the petition are true and correct.
¶10 Father argues the trial court's acceptance of Mother's stipulation alone and refusal of Father's request for a non-jury trial in order to contest the allegations of State's petition, effectively deemed him unfit to take responsibility and care for Child without affording him the opportunity to contest the deprived determination. He contends the court's interpretation of § 1-4-601 as allowing Mother's stipulation to bind both parents, and to thereby deny Father custody and control of Child without a hearing, violated Father's right to due process and is prohibited by the holding of the U.S. Supreme Court in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208 (1972). We agree.
¶11 In Stanley, the Supreme Court held that the Due Process and Equal Protection Clauses of the Fourteenth Amendment (1) prohibited states from deeming an unwed father unfit as a parent solely on the basis of his unmarried status, and (2) required states to provide each parent with a hearing on his or her fitness before taking a child from the parent's custody and control. The case involved an unwed father who sought custody of his two youngest children after the children's mother died. The children had been taken into the state's custody without a hearing as to the father's fitness, under a state law that presumed unwed fathers were unfit. The Supreme Court, calling the state's method a "procedure by presumption," found it unconstitutional and held that states must provide a parent with an individualized hearing on the parent's fitness before removing a child from the parent's custody. Id. at 656-57.
¶12 First noting the legal presumption that a child's natural parent is fit to raise the child, the Court reiterated its previous recognition that the integrity of the family unit is entitled to constitutional protection. Id. at 651. It then explained:
Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand.
. . . .
The State's interest in caring for [the father's] children is de minimis if [the father] is shown to be a fit father. It insists on presuming rather than proving [the father's] unfitness solely because it is more convenient to presume than to prove. Under the Due Process Clause that advantage is insufficient to justify refusing a father a hearing when the issue at stake is the dismemberment of his family.
Id. at 656-58 (footnotes omitted).
¶13 As suggested by the excerpt above, the Stanley Court in reaching its conclusion specifically considered the fact that the State of Illinois had a stated statutory objective of "removing [a minor child] from the custody of his parents only when [the child's] welfare or safety or the protection of the public cannot be adequately safeguarded without removal." Id. at 652 (emphasis added). It then observed that "the State registers no gain towards its declared goals" if it separates a child from a fit parent, but instead "spites its own articulated goals when it needlessly separates [a child] from his family." Id. at 652-53.
¶14 Like Illinois, Oklahoma's articulated policy objective favors maintaining family integrity. The law presumes that "the best interests of a child are ordinarily served by leaving the child in the custody of the parents," and the State will "[i]ntervene in the family only when necessary to protect a child from harm or threatened harm." 10A O.S.2011 § 1-102(A)(1) and (B)(1). Our state Supreme Court also has consistently recognized that a parent's interest in "the care and management of one's child is a fundamental liberty interest" protected by the Constitution. See, e.g., In re S.B.C., 2002 OK 83, ¶ 5, 64 P.3d 1080 (citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388 (1982)); Matter of Chad S., 1978 OK 94, ¶ 12, 580 P.2d 983 (citing Stanley v. Illinois); In re Adoption of L.D.S., 2006 OK 80, ¶ 11, 155 P.3d 1. Although the child also has constitutional rights, see In re T.H.L., 1981 OK 103, ¶ 13, 636 P.2d 330, none of these cases suggests that the parental liberty interest at stake presumptively belongs to one parent alone.
¶15 A proceeding to adjudicate a child as deprived clearly threatens each parent's interest by threatening to disrupt each parent's relationship with her or his child. Depending on the reasons leading to the adjudication hearing and its outcome, the proceeding may result not only in making a child a ward of the court but also in removing a child from its parent's custody and allowing State to impose a variety of standards of conduct, sanctions, and requirements on each parent before one or both parents may regain custody. The specific conditions that State may impose on a specific parent will depend on the conditions leading to the child being taken into custody and, if warranted, adjudication as deprived. While in some cases those conditions will be the same for each parent, in other cases they will be different. Whether different conditions exist for each parent cannot fairly be determined if one parent is permitted to bind the other parent without the explicit or implicit agreement of the parent so bound. Moreover, allowing the result urged by State here deprives the parent requesting a non-jury trial of the only option afforded under 10A O.S.2011 § 1-4-601(D) to challenge State's allegations. Father both exercised that option here and made clear his objection to Mother's stipulation.
¶16 We reject State's contention that the outcome here is dictated by the holding of the Oklahoma Court of Civil Appeals in In re C.T., 1999 OK CIV APP 55, 983 P.2d 523. Both parties identify this case as the opinion on which the trial judge relied when it denied Father's request for a non-jury trial. We find such reliance was misplaced under the circumstances presented.
¶17 In C.T, the Court reversed a trial court order adjudicating two minor children deprived only with respect to their mother but not as to their father. The trial court had conditionally placed custody with the father while also making the children wards of the court. The State appealed, and COCA held that the trial court should have deemed the children deprived as to their father as well as their mother, as the evidence presented at the adjudication hearing showed the father was complicit and culpable in creating the children's deprived condition. Although, as State argues, the Court held that the "focus in an adjudication proceeding" is on the child rather than the parent and that a child is "either deprived or not deprived," id. at ¶ 7, the Court did not hold that such a determination is made at the expense of one parent's right to a hearing on that very issue. It is also significant that, unlike the case before us, the Court's decision in C.T. in fact occurred after conducting a full hearing attended by both parents. The case before us now is distinguishable.
¶18 Procedural due process mandates that a person be accorded an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893 (1976)(quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187 (1965)). Denying Father an opportunity to challenge State's allegations in a non-jury trial was both unfair to Father and wholly inconsistent with Oklahoma's stated legislative policy of protecting a natural parent's fundamental right to the care and custody of his or her child. Father's and Mother's status as divorced was undisputed, and nothing in the record demonstrates that Father was aware of or involved in Mother's activities when Child was taken into protective custody. Father should not be denied the opportunity to be heard on his defense that Child would not be deprived -- under state and ICWA standards[4] -- if allowed to remain in Father's custody. We therefore find that the trial court committed reversible error in denying Father's request for a non-jury trial, and its order adjudicating Child as deprived must be vacated.
CONCLUSION
¶19 Having found the trial court committed reversible error when it denied Father's request for a non-jury trial in response to State's petition seeking to adjudicate Child as deprived, we vacate that decision. We remand for further proceedings consistent with the views expressed herein.

¶20 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, P.J., and FISCHER, J., concur.

FOOTNOTES

[1] Until that point in the case, all filings had indicated that the Indian Child Welfare Act did not apply.

[2] The order contains the following statement:
NO CONTEST STIPULATION TO PETITION BY NATURAL MOTHER . . . [FATHER] REQUESTS NON-JURY ADJUDICATION TRIAL AS TO HIS CHILD, [J.C.]. [FATHER'S] OBJECTION TO ADJUDICATION IS OVERRULED. DISPO INSTANTER, PLAN IS ORDERED AS WRITTEN FOR ALL PARENTS, OVER OBJECTION OF TIM GIFFORD ON BEHALF OF [FATHER]. . . . ALL PARTIES CAUTIONED THAT ISP MUST BE COMPLETED WITHIN 90 DAYS OR A PETITION TO TERMINATE PARENTAL RIGHTS MAY BE FILED.

[3] The July 26, 2017 order recites that Child had been placed in a "kinship home" and that the two half-siblings were currently in a traditional home, but that "all three children will be placed together in a kinship home within one month."

[4] Under the federal ICWA, "No foster care placement may be ordered . . . in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses," that a parent's continued custody of the child "is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e). See also Okla. Admin. Code 340:75-19-12, "Adjudication of an Indian child," stating as follows at subsection (b):
Standards of evidence for deprived adjudication of the Indian child. Adjudication of an Indian child per Section 1912(e) of Title 25 of the United States Code requires a determination, by the court supported by clear and convincing evidence, including testimony of a qualified expert witness, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage or harm to the child.





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1999 OK CIV APP 55, 983 P.2d 523, 70 OBJ 1910, In the Matter of C.T.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2002 OK 83, 64 P.3d 1080, IN THE MATTER OF S.B.C.
Discussed
 2004 OK 93, 103 P.3d 1099, IN THE MATTER OF BABY BOY L.
Discussed
 2006 OK 80, 155 P.3d 1, IN THE MATTER OF THE ADOPTION OF L.D.S.
Discussed
 2010 OK 39, 236 P.3d 116, IN THE MATTER OF THE ADOPTION OF BABY BOY A
Discussed
 1978 OK 94, 580 P.2d 983, MATTER OF CHAD S.
Discussed
 1981 OK 103, 636 P.2d 330, T. H. L., In re
Discussed
 2000 OK 82, 13 P.3d 484, 71 OBJ 2668, IN THE MATTER OF A.M. & R.W.
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 40, Short Title
Cited
 10 O.S. 40.1, Purpose - Policy of State
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA