2013 OK CIV APP 114

**In the Matter of H.R.T., Alleged Deprived Child.**

**Rhiannon Tosto and Randy Tosto, Appellants,**

v.

**State of Oklahoma, Appellee.**

**No. 111,680.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 18, 2013.

The appropriate proceeding under § 7700-607 will not permit such an outcome.

Julie M. Fulton, Oklahoma City, OK, for Appellants.

David W. Prater, District Attorney, Jane A. Brown, Assistant District Attorney, Oklahoma City, OK, for Appellee.

JANE P. WISEMAN, Judge.

¶1 Rhiannon Tosto (Mother) and Randy Tosto (Father) appeal from an order of the trial court denying their motion to vacate a judgment in connection with the termination of their parental rights entered after they failed to appear at a pretrial hearing. The issue on appeal is whether the trial court abused its discretion when it refused to vacate the default termination of their parental rights. After review of the record and applicable law, we reverse the trial court's order and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On April 19, 2011, the trial court issued an order to take HRT, born in August 2006, into emergency custody based on allegations that HRT was found knocking on the door of a home at 3:30 a.m., after her parents left her alone in their truck. The State of Oklahoma filed a petition to adjudicate HRT deprived and to terminate Mother's parental rights because (1) Mother has failed to provide the proper parental care and guardianship for HRT; (2) Mother's home is unfit due to prior child welfare history, neglect, and lack of supervision; (3) "Mother left the child in the back of their truck at 3:30 am while she and Father went into a person's home to purchase a jukebox;" (4) Mother did not realize HRT was missing until later that morning; (5) HRT knocked on the door of the person's home whom Mother had been visit-

ing saying she was scared and could not find her parents; and (6) Mother's parental rights to another child had been terminated in 2003 after he had been discovered playing in a busy intersection when he was four years old. State asked the court' to adjudicate HRT deprived and to terminate Mother's parental rights "pursuant to 10A O.S. 1-4-904(B)(14) for failure to correct conditions of a previous deprived adjudication" and "pursuant to 10A O.S. 1-4-904(B)(6) for failure to correct conditions of a previous termination." State also sought to terminate Father's parental rights on these same statutory grounds.

¶ 3 State sent Mother and Father each a summons and notice to appear stating that the matter would be heard on May 23, 2011. Both notices included the following in capital letters and bold face type: "Failure to respond to this summons or to appear at this hearing constitutes consent to the adjudication of these children as deprived children and may ultimately result in loss of custody of these children or the termination of parental rights to these children."

¶ 4 State filed an amended petition on June 29, 2011, to correct what it later characterized in its brief on appeal as "a scriven[e]r's error." The docket sheet shows that the case was set for pretrial on the following dates and then reset for hearing: June 27, 2011, September 9, 2011, October 20, 2011, December 8, 2011, and March 15, 2012.

¶ 5 In an individualized service pre-adjudication report filed December 8, 2011, State asked the trial court to find that reasonable efforts to reunite the family were not required. State filed a third amended petition on March 1, 2012, to include as another basis for termination of Mother's and Father's parental rights HRT's disclosure of sexual abuse by Father and Mother's failure to protect HRT.

¶ 6 The March 15, 2012, Permanency/Review Order indicates that Mother and Father were served with the third amended petition. The March 15 order sets a pretrial hearing for July 23, 2012, and jury trial for August 27, 2012. On the form used for the Permanency/Review Order was the following: "☐Mother ☐Father are advised that failure to comply with any requirements of the

treatment plan or any requirements of the Court including failing to appear at any court hearing may result in the loss of custody of the child(ren) or the termination of parental rights to the child(ren)." Neither checkbox was marked.

¶ 7 The transcript of the proceeding from July 23, 2012, states the following:

> The parents do not appear. They were ordered to be here at 9:00 this morning. It is now 4:00 in the afternoon. They have not been here all day. The case is set for pretrial this morning. [Mother's and Father's attorney] Mr. Box was here at 9:00. I advised him that his clients needed to be here by 1:30. They have not been here and have not arrived.
>
> I gave them a tentative date of November 5th for jury trial if the parents appear. However, I told him that if they do not appear, I would take the State's request for default termination at that time.

The court stated that it "has been very specific with the parents repeatedly that they had to be here for pretrial hearings and they were not here today." The trial court stated:

> *I am going to go ahead and grant termination by default at this time,* based upon what I advised Mr. Box of this morning. I think he was on notice of my intention. I think there's more than enough in the record to justify termination of parental rights and I'll make it part of the record at this time.

(Emphasis added.)

¶ 8 A journal entry of judgment terminating Mother's and Father's parental rights was filed August 7, 2012, citing their failure to appear at the pretrial hearing. The court found that termination was just and proper pursuant to 10A O.S. 1-4-904(B)(4), (14) and that the termination of parental rights was in HRT's best interest. The court stated, "[H]aving examined the document and records admitted into evidence and having heard the testimony of witnesses sworn and examined in open court, and having heard the statements of counsel, . . . finds that the parental rights of the [M]other and [F]ather . . . should be terminated." However, there is nothing in the record to show that the trial

court heard testimony or considered any exhibits admitted into evidence on July 23, 2012, or on May 23, 2012, the date listed on the journal entry of judgment as the day of the hearing.[1] The transcript of the July 23 hearing is represented as a complete transcript of the proceeding at which the trial court terminated the parents' parental rights. The two and a half page transcript contains argument of counsel and the court's ruling, but contains no testimony or admission of exhibits. There is no indication of what current evidence the trial court relied on, if any, except for its statement that, "I think there's more than enough evidence in the record to justify termination of parental rights and I'll make it a part of the record at this time."

¶ 9 On August 31, 2012, Mother and Father filed a motion to vacate the journal entry of judgment on the ground that they were not aware of the pretrial date on July 23, 2012.[2] They asserted the journal entry of judgment was entered without notice to them and asked for a hearing on the termination of their parental rights.

¶ 10 A hearing was held on March 7, 2013, for what the court stated was a hearing "on a motion to set aside a finding of termination by default." Parents' counsel, Mr. Box, told the court that at the March 15, 2012, hearing, he wrote down for Mother and Father the date of August 27 as the date of the hearing. Box stated that the parents appeared every single time for two years in this case on approximately 12 separate occasions, that it "is an aberration that they did not appear," and their failure to appear was not deliberate. Box stated, "[T]hey were given, by me, the next court date to appear when they appeared the time before this default was taken. And they were given the date that I gave them, and wrote down for them, of August 27th, 2012." The court stated, "I take it, from their failure to appear in my court, from my case, that they're not interested in proceeding." The court also noted that there were two other times that Mother and Father were not present for court.

¶ 11 Father testified that he was unaware of the July 23, 2012, pretrial date because he had written down at the March hearing that the next court date was August 27, 2012. Father asserted he did not deliberately miss the court date.

¶ 12 On cross-examination, Father was asked about several dates that he missed after the motion to vacate was filed. Box later explained that he came to court without Mother and Father on those dates "to reset these dates simply because the trial dates get put over." Box stated, "It wasn't anything that required them to appear in court, but I came out and reset."

¶ 13 After the hearing on the motion to vacate, the trial court took the matter under advisement. On March 21, 2013, the trial court denied the motion to vacate finding that the initial notice and summons, served on the parents in April 2011, notified them of the consequences of the failure to appear as required by statute and that the notice was given 15 days prior to the initial hearing in May 2011, "and well in advance of the hearing date July 23, 2012." The order states that the parents failed to appear at the July 23, 2012, hearing at 9:00 a.m. and the court told their attorney he had until 1:30 p.m. to have the parents present in court, or the court would hear evidence on whether their parental rights should be terminated. The order states that Mother and Father failed to appear on July 23, "[t]he court received evidence, which included testimony from DHS, as well as all of the records from this proceeding as well as the proceedings from Oklahoma County Case # JD–2003–655, which served as a basis for the termination of parental rights in the Petition. The Court sustained the state's petition." The court considered the motion to vacate and found "[n]o evidence was presented that the parents failed to attend the hearing or contact their attorney due to unavoidable casualty or misfortune." The court cites 10A O.S. 1–4–905, *In re A.T.*, 2011 OK CIV APP 81, 262 P.3d 386, and *In re J.C.*, 2010 OK CIV APP

---

1. The docket sheet does not indicate that a hearing was held on May 23, 2012, or July 23, 2012. There is, however, a transcript of a proceeding on July 23.

2. The motion to vacate, filed within 30 days after the default judgment was filed, falls under 12 O.S.2011 1031.1.

138, 244 P.3d 793, in support of its decision to deny the motion to vacate. Mother and Father appeal from the trial court's decision denying their motion to vacate.

## STANDARD OF REVIEW

¶ 14 We review " 'a trial court's ruling either vacating or refusing to vacate a judgment [for] abuse of discretion.' " *Ferguson Enters., Inc. v. H. Webb Enters., Inc.,* 2000 OK 78, ¶ 5, 13 P.3d 480, 482. This appeal involves the trial court's denial of Mother's and Father's motion to vacate a default judgment. "A default judgment is a judgment entered against a party because of that party's failure to comply with a command imposed by law." *Powers v. District Court of Tulsa Cnty.,* 2009 OK 91, n. 6, 227 P.3d 1060. "Thus a 'default judgment has been defined as a judgment rendered in consequence of the non-appearance of the defendant.' " *Id.* (quoting *Choctaw Cnty. Excise Bd. v. St. Louis–San Francisco Ry. Co.,* 1969 OK 110, ¶ 9, 456 P.2d 545, 548). This termination resulted from the parents' failure to appear at a pretrial hearing.

¶ 15 When this Court reviews a trial court order refusing to vacate a default judgment, we will consider the following factors:

1) default judgments are not favored; 2) vacation of a default judgment is different from vacation of a judgment where the parties have had at least one opportunity to be heard on the merits; 3) judicial discretion to vacate a default judgment should always be exercised so as to promote the ends of justice; 4) a much stronger showing of abuse of discretion must be made where a judgment has been set aside than where it has not.

*Ferguson,* 2000 OK 78 at ¶ 5, 13 P.3d at 482. We must also take into account "whether substantial hardship would result from granting or refusing to grant the motion to vacate." *Id.*

## ANALYSIS

¶ 16 Title 10A O.S.2011 1-4-905, cited by the trial court in its decision, allows a consent judgment to be entered in a termination case for a parent's failure to appear. Section 1-4-905(A)(1) provides the following:

Prior to a hearing on the petition or motion for termination of parental rights, notice of the date, time, and place of the hearing and a copy of the petition or motion to terminate parental rights shall be served upon the parent who is the subject of the termination proceeding by personal delivery, by certified mail, or by publication as provided for in Section 1-4-304 of this title.

The notice to the parents "must contain the following or substantially similar language":

"FAILURE TO PERSONALLY APPEAR AT THIS HEARING CONSTITUTES CONSENT TO THE TERMINATION OF YOUR PARENTAL RIGHTS TO THIS CHILD OR THESE CHILDREN. IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION OR MOTION ATTACHED TO THIS NOTICE."

10A O.S.2011 1-4-905(A)(2). The notice required by Section 1-4-905 must "be served upon the parent not less than fifteen (15) calendar days prior to the hearing." 10A O.S.2011 1-4-905(A)(3).

¶ 17 "The failure of a parent who has been served with notice under this section to personally appear at the hearing shall constitute consent to the termination of parental rights by the parent given notice." 10A O.S.2011 1-4-905(A)(5). "When a parent who appears voluntarily or pursuant to notice is directed by the court to personally appear for a subsequent hearing on a specified date, time and location, the failure of that parent to personally appear, or to instruct his or her attorney to proceed in absentia at the trial, shall constitute consent by that parent to termination of his or her parental rights." 10A O.S.2011 1-4-905(A)(5). The question here is whether Mother's and Father's appearance at several previous hearings but absence from one pretrial hearing was grounds for a default judgment. The statute specifically provides that "the failure of that parent to personally appear, *or to instruct his or her attorney to*

*proceed in absentia at the trial,* shall constitute consent by that parent to termination of his or her parental rights." 10A O.S.2011 1–4–905(A)(5)(emphasis added). This is clearly a provision allowing an attorney to proceed, presumably at trial, in the absence of his or her client. According to the trial court, Mother's and Father's attorney was present at the July 23, 2012, hearing. Their attorney could have adequately represented their interests at the pretrial hearing so that the matter could proceed to jury trial on August 27, 2012. Or, if the trial court decided to proceed with trial on July 23, the attorney could have cross-examined witnesses for State and presented witnesses for Mother and Father.

¶ 18 Both Mother and Father had appeared at previously scheduled pretrial hearings. With Mother's and Father's attorney present at the July 23 pretrial hearing, the record provides no reason why the trial court did not consider holding the pretrial hearing as scheduled and proceeding with the scheduled jury trial on August 27, 2012.

¶ 19 Even if Mother and Father failed to appear after receiving proper notice of the July 23 pretrial hearing and had been informed of the consequences of not appearing, this failure would not have unreasonably prolonged the termination process if the trial court had allowed the matter to proceed to trial. The trial was scheduled just over one month from the date the trial court decided that Mother's and Father's failure to appear should result in a default judgment.

¶ 20 We recognize that Mother's and Father's rights must be balanced against the rights of the children to be in a wholesome environment and that the best interests of the children are always the paramount consideration. *In re A.W.,* 2011 OK CIV APP 27, ¶ 22, 250 P.3d 343, 349. Without any prejudice resulting from a delay in the trial setting, the better course would have been to allow the case to proceed to jury trial and allow the parents to present witnesses and have their case heard at trial.

¶ 21 After considering the factors enunciated in *Ferguson Enterprises, Inc. v. H. Webb Enterprises, Inc.,* 2000 OK 78, ¶ 5, 13 P.3d 480, 482 (default judgments are disfavored, the parties have not had at least one opportunity to present their case on its merits to a jury, judicial discretion should be exercised to promote justice, and a lesser showing of abuse of discretion is required where a judgment has not been set aside), we conclude that failing to appear for a pretrial hearing should not have in and of itself resulted in a default judgment when the parents' attorney was present and able to represent them. Nothing in the July 23 transcript shows that the trial court heard testimony or conducted a trial on the issue of whether State met its burden to prove by clear and convincing evidence grounds for termination and that HRT's best interest was served by the termination of Mother's and Father's parental rights.[3] *See In re C.D.P.F.,* 2010 OK 81, ¶ 5, 243 P.3d 21, 23 ("In parental termination cases, the State must show by clear and convincing evidence that the child's best interest is served by the termination of parental rights.").

¶ 22 "The integrity of the family unit and preservation of the parent-child relationship command the highest protection in our society." *In re M.H.,* 2010 OK CIV APP 136, ¶ 12, 245 P.3d 1266, 1269. "Because of the fundamental right which parents have in the custody of their children and the gravity of the sanction imposed by termination, there is no substitute to *fully* complying with all procedural safeguards." *Id.* Termination of a parent's "parental rights is too serious to

---

3. State says in its brief on appeal, "It should be noted that there were two hearings that day the one that was scheduled at 9:00 a.m. in which testimony was taken and the second hearing was at 1:30 wherein the court noted that the mother and father did not appear." This is the only reference to such an evidentiary hearing, and the record contains no transcript of such a proceeding. In contrast, the trial court recites in its order denying the motion to vacate that it instructed Mr. Box "to have his clients before the court at 1:30 that afternoon, otherwise the court would proceed to hear the evidence and consider whether or not termination of parental rights should be granted and whether or not it would be in the child's best interest." Nothing on the case docket sheet shows that such an evidentiary hearing took place.

permit procedural shortcuts." *Id.* at 13, 245 P.3d at 1269.[4]

¶ 23 There is no confirmation in the record that the trial court advised Mother and Father that they must be present at the July 23 hearing. The March 15, 2012, order setting the July 23 and August 27 dates shows that no such instruction was given, even though there is clearly a space on the order to indicate that such notice was given. Even if the May 2011 summons and notice more than two years earlier, informing Mother and Father of the consequences of non-appearance meet the notice requirement of 10A O.S.2011 1–4–905 in regard to consent to termination, Section 1–4–905(A)(5) clearly allows an attorney to proceed, presumably at trial, in the absence of his or her client. Mother's and Father's attorney could have adequately represented their interests at the pretrial hearing so that the matter could proceed to jury trial as scheduled.

¶ 24 The trial court cites *In re J.C.*, 2010 OK CIV APP 138, 244 P.3d 793, and *In re A.T.*, 2011 OK CIV APP 81, 262 P.3d 386, to support its decision to deny Mother's and Father's motion to vacate. We find that neither case supports the trial court's decision. *In re J.C.* addressed termination of a mother's parental rights after she failed to appear at trial. However, the trial court in *In re J.C.* held an evidentiary hearing and did not base its decision solely on the mother's failure to appear. *In re J.C.*, 2010 OK CIV APP 138 at n. 1, 244 P.3d 793.

¶ 25 The trial court in *In re A.T.* found that a mother consented to the termination of her parental rights when she failed to show up for pretrial and her attorney was present at the hearing to present his motion to withdraw due to her failure to stay in contact with him. *In re A.T.*, 2011 OK CIV APP 81 at ¶ 3, 262 P.3d at 387. The trial court granted the attorney's request to withdraw as the mother's attorney. *Id.* Therefore, it appears that the mother did not have at the pretrial hearing an attorney ready and able to represent her. In contrast, Mother's and Father's attorney appeared for the pretrial hearing to represent Mother's and Father's interest in the termination proceedings.

¶ 26 The mother in *A.T.* filed a motion to vacate pursuant to 10A O.S. Supp.2009 1–4–905(B), which provided then and still provides:

1. The court shall have the power to vacate an order terminating parental rights if the parent whose parental rights were terminated pursuant to subsection A of this section files a motion to vacate the order within thirty (30) days after the order is filed with the court clerk.

2. Notice of the motion shall be given to all the parties and their attorneys and the court shall set the matter for hearing expeditiously.

3. The burden of proof is on the defaulting parent to show that he or she had no actual notice of the hearing, or due to unavoidable casualty or misfortune the parent was prevented from either contacting his or her attorney, if any, or from attending the hearing or trial.

4. If the motion to vacate the order terminating parental rights due to a failure to appear is found to have merit, the statutory consent shall be set aside and a new trial conducted.

The mother alleged that a surgery and subsequent complications caused her to be unable to attend the trial. *In re A.T.*, 2011 OK CIV APP 81 at ¶ 4, 262 P.3d at 387. The Court of Appeals found that the mother "met her burden under 1–4–905(B)(3)." *Id.* at 10, 262 P.3d at 388.

¶ 27 The Court also stated,

4. We disagree with the dissent's conclusion, based on a non 1031.1 case (*Farm Credit Bank of Wichita v. Trent*, 1997 OK 70, ¶ 22, 943 P.2d 588, 592), that Mother and Father must show by cogent, clear, and convincing evidence "sufficient cause" for their non-appearance in order to prevail on their motion to vacate pursuant to 12 O.S.2011 1031.1. Further, the dissent's reliance on *Woodruff v. Moore*, 1938 OK 119, 182 Okla.

120, 77 P.2d 62, and *Ross v. Pace*, 2004 OK 13, 87 P.3d 593, is misplaced-the former being a 12 O.S. 1031 case raising questions of whether statutory grounds ("irregularity in obtaining the judgment") and defenses to the action had been proven by defendant, and the latter involving failure to respond to discovery after a "number of opportunities." *Ross*, 2004 OK 13 at ¶ 12, 87 P.3d at 595.

Even if Mother had failed to meet her burden under 1–4–905(B)(3), we would still reverse the trial court's judgment because State neglected to comply with the due process requirements prescribed by the Oklahoma Legislature in parental rights termination proceedings. Termination of parental rights is only proper where clear and convincing evidence in the record supports the grounds alleged for termination. *In re S.B.C.*, 2002 OK 83, ¶ 6, 64 P.3d 1080, 1082–83. We hold this heightened evidentiary standard is applicable even when parental rights are terminated pursuant to the statutory consent provisions of 1–4–905.

*Id.* at 11, 262 P.3d at 388 (emphasis added). The Court noted that although the docket revealed a long history of the mother's failure to correct the conditions that led to the deprived adjudication, "there is no indication the trial court considered such evidence in granting State's termination motion." *Id.* at 12, 262 P.3d at 388. The Court found that the mother's "parental rights were terminated by consent based upon her failure to appear and present arguments on the merits—not because clear and convincing evidence supported the termination and the children's best interests would be served by the termination." *Id.*

¶ 28 We find the reasoning of the *A.T.* Court persuasive, but in support of Mother's and Father's argument on appeal rather than in support of the trial court's decision to grant a default termination of parental rights. Mother's and Father's parental rights were terminated because they failed to appear, not because State presented clear and convincing evidence to support the termination of parental rights or evidence that termination of their parental rights was in HRT's best interest. We cannot ascertain from the record on appeal what evidence, if any, was submitted to and relied on by the trial court, and we therefore cannot find that the trial court had clear and convincing evidence on which to terminate Mother's and Father's parental rights. The record does not show that State presented any evidence

to the trial court at the proceeding at which Mother's and Father's parental rights were terminated. State asked for a termination by default, and the trial court granted that request. We conclude State failed to present clear and convincing evidence to support its request to terminate parental rights.

¶ 29 For the foregoing reasons and given the fundamental right parents have in their children's custody and the finality of the termination process which ends that right, it was an abuse of discretion to refuse to vacate this default judgment. Mother's and Father's parental rights were terminated for their failure to appear. State did not meet its burden to present clear and convincing evidence in support of the grounds for termination or to show that termination was in HRT's best interest.

## CONCLUSION

¶ 30 The trial court's denial of the motion to vacate the default judgment constituted an abuse of discretion. Accordingly, we reverse the decision of the trial court and remand for a new trial.

¶ 31 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, V.C.J., concurs, and FISCHER, P.J., dissents.

FISCHER, P.J., Dissenting.

¶ 1 In this case, the biological parents of HRT appeal the district court's order denying their motion to vacate the district court's August 7, 2012, Judgment terminating their parental rights. The Judgment was entered after the parents failed to attend a pretrial conference scheduled for July 23, 2012, that they were ordered to attend by the district court. The Judgment was entered pursuant to Title 10A O.S.2011 1–4–905(A)(5): "The failure of a parent who has been served with notice under this section to personally appear at the hearing shall constitute consent to the termination of parental rights by the parent given notice...." [5] The district court deemed

---

**5.** The record reflects that the statutorily required notice was served on the parents and neither in their motion to vacate or in this appeal do the

parents contend otherwise or argue that their parental rights should not be terminated because they were not provided the notice required by

the parents' failure to attend the July 23 hearing consent to the termination of their parental rights.[6] The parents sought to vacate the Judgment, arguing that they did not know they were supposed to appear at the July 23 hearing. Their motion asserts that the Judgment is, in essence, a default judgment, that default judgments are not favored and that they are entitled to a trial on the merits of the State's petition to terminate their parental rights. After a hearing on the parents' motion at which Father was the only witness, the district court found that the parents failed to meet their burden of proving that they did not have notice they were required to attend they July 23 hearing. I would affirm that decision.

¶ 2 I agree with the Majority, the parent's August 31, 2012, motion to vacate filed within thirty days of the Judgment is governed by 12 O.S.2011 1031.1. However, because the parent's motion was filed more than ten days after the judgment sought to be vacated, it did not extend the time to appeal the Judgment. *Stites v. DUIT Const. Co., Inc.,* 1995 OK 69, ¶ 25, 903 P.2d 293, 302: *"No post-judgment quest for relief—other than one made by a timely new-trial motion—will operate to extend the time for appellate review of errors made in a nisi prius judgment or in a final order." Cf., Schepp v. Hess,* 1989 OK 28, n. 2, 770 P.2d 34, 36 n. 2 (motion filed after the ten-day period for motions for new trial but within thirty days following the decision will not operate to extend the time to appeal from that decision). Further, the parents' petition in error was filed April 18, 2013, more than thirty days after the Judgment was filed. "An appeal to the Supreme Court of Oklahoma, if taken, must be commenced by filing a petition in error with the Clerk of the Supreme Court of Oklahoma

within thirty (30) days from the date a judgment." 12 O.S.2011 990A (A). Consequently, the Judgment terminating the parents' parental rights is beyond appellate review. *Stites,* 1995 OK 69, ¶ 25, 903 P.2d at 302 (errors in ruling on a motion to vacate are confined to those in granting or denying relief sought upon the grounds advanced and the evidence presented in the motion).

¶ 3 Therefore, the issue in this appeal is whether the district court erred in refusing to set aside the Judgment based on the parents' argument that they did not have notice they were required to attend the July 23 pretrial conference.

> The common law's test in force in this state for measuring the legal correctness of a trial court's response to a timely 1031.1 [motion to vacate] is whether sound discretion was exercised upon sufficient cause shown to vacate, modify, open or correct the earlier decision, or to refuse the relief sought.

*Schepp v. Hess,* 1989 OK 28, ¶ 11, 770 P.2d at 39 (citation omitted). Although the power of the district court to vacate a judgment pursuant to 12 O.S.2011 1031.1 is not confined to the grounds listed is 12 O.S.2011 1031 and is "almost unlimited," *Id.* ¶ 9, 770 P.2d at 38, I find the following instructive in informing the district court's exercise of discretion in this case: "[A] party seeking to vacate a default judgment, based on an alleged lack of notice, [has] the burden of proving by clear, cogent, and convincing evidence that the judgment is subject to vacation." *Farm Credit Bank of Wichita v. Trent,* 1997 OK 70, ¶ 22, 943 P.2d 588, 592 (affirming the denial of a section 1031(3) motion to vacate seeking to set aside a default judgment against corporation and its officers finding their affidavits were insuf-

---

10A O.S.2011 1-4-905(A)(1) and (2). Further, the parents have not challenged the constitutionality of this statute and that issue is not addressed in this Dissent.

**6.** Although the parents have not raised this issue, I agree with the Dissent in *In the Matter of K.S.,* 2013 OK CIV APP 33, ¶ 23, 299 P.3d 515, 519:
> [T]he statute for termination of parental rights for failure to appear after notice does not prohibit the state from asking for default termination, nor does it limit the trial court from granting such termination at noticed

hearings other than a date set for trial on the merits.
*Cf.,* paragraph B(3) of the relevant statute:
> The burden of proof is on the defaulting parent to show that he or she had no actual notice of the hearing, or due to unavoidable casualty or misfortune the parent was prevented from either contacting his or her attorney, if any, or from attending *the hearing or trial.*

10A O.S.2011 1-4-905(B)(3) (emphasis added).

ficient to overcome recitation of proper service and notice contained in the judgment roll), and citing *Davidson v. Gregory*, 1989 OK 87, 780 P.2d 679 (affirming denial of section 1031(3) motion to vacate foreclosure judgment by defendant who entered an appearance but claimed "irregularity" due to lack of notice required by district court Rule 10). Further guidance in evaluating the discretion exercised by the district court in deciding term-time motions to vacate is provided in *Woodruff v. Moore*, 1938 OK 119, ¶ 9, 182 Okla. 120, 77 P.2d 62, 63–64:

> The discretion granted trial judges in opening or vacating their judgments during term extends to a reasonable degree in both directions. Unless the refusal to vacate a default judgment is an abuse of that discretion, such order is not reversible. If the question whether there was an abuse depends upon a question of fact pertaining to the grounds for vacating, upon which question there was conflicting evidence, the ordinary rule applies and the presumption is that the finding of fact was consistent with the order.

*Woodruff* was recently cited with approval in *Ross v. Pace*, 2004 OK 13, 87 P.3d 593.

¶ 4 The procedure for resolving the parents' motion is set out in 10A O.S.2011 1–4–905(B):

> 1. The court shall have the power to vacate an order terminating parental rights if the parent whose parental rights were terminated pursuant to subsection A of this section files a motion to vacate the order within thirty (30) days after the order is filed with the court clerk.
>
>   *   *   *
>
> 3. The burden of proof is on the defaulting parent to show that he or she had no actual notice of the hearing, or due to unavoidable casualty or misfortune the parent was prevented from either contacting his or her attorney, if any, or from attending the hearing or trial.

As the district court found in its order denying the parents' motion, the parents' motion

to vacate does not assert that they did not attend the July 23 pretrial conference "due to unavoidable casualty or misfortune." Their sole contention is "that they were not aware of the court date of the pre-trial date on the 23rd day of July 2012 and believed the court date to be August 27, 2012." Consequently, this appeal is determined by whether the parents provided "sufficient cause" that they did not know they were required to attend the July 23 hearing. *Schepp*, 1989 OK 28, ¶ 11, 770 P.2d at 39.

¶ 5 The evidence relevant to this issue is established from the court file, the transcript of proceedings on the afternoon of July 23, 2011, and Father's testimony at the hearing on the parents' motion to vacate. The district court announced in the July 23 proceedings that he was taking judicial notice of the matters contained in the court file and the events that occurred in previous proceedings before the court:

> The Court is aware that in previous hearings, the information was presented to the Court that the parents have not participated in any services, have not taken any steps to correct conditions. The Court is aware of the reports that have been filed to-date in this case.
>
>   *   *   *
>
> I think there's more than enough in the record to justify termination of parental rights and I'll make it a part of the record at this time.

*See* 12 O.S.2011 2202. The relevant facts are as follows:

> 1. The parents did not appear at the initial emergency hearing although the attorney they hired to represent them did appear. They did not appear at the next hearing despite being specifically advised by the DHS worker assigned to their case that a hearing had been set. They did appear with their attorney at the pretrial conference on June 27, 2011, as well as at the continuation of that pretrial conference held on October 20, 2011,[7] December 8,

---

7. Although a "Permanency/Review Order" form was used to document the October 20 proceeding rather than a pretrial conference form, the case

was set for pretrial conference on October 20 pursuant to the June 27 order, and the proceeding appears to have been conducted as a pretrial

2011 and March 15, 2012. In general, the pretrial conferences were continued at the request of the parents because they had been charged in a related criminal case and the parents' counsel represented that resolution of the criminal case was likely to resolve the parental termination case.[8]

2. At the March 15 pretrial conference, the parents were served with the State's third amended petition adding allegations that Father sexually molested HRT as an additional ground for termination. Father was denied further visitation with HRT. Mother was granted supervised visitation but did not take advantage of that opportunity. The pretrial conference was continued until 9:00 a.m. on July 23 and trial was set for August 27, 2012.

3. The parents' attorney appeared at 9:00 a.m. on July 23, but the parents did not. The district court advised the parents' counsel that at the March 15 pretrial conference he had ordered the parents to attend the July 23 pretrial conference as he had done in each preceding pretrial conference, and that if they did not appear he would immediately consider the State's motion to terminate the parents' parental rights. At that time, counsel for the parents did not represent to the court that he had advised the parents that they did not need to attend the 9:00 a.m. July 23 pretrial conference. The district court continued the pretrial conference until 1:30 in the afternoon in order to permit counsel time to contact the parents and arrange for their appearance.

4. By 4:00 p.m. on July 23 the parents had not appeared before the district court nor does the record reflect any further contact by the parents' counsel with the district court. Further, there is no evidence in this record purporting to explain why the parents did not appear at 1:30 on July 23, nor did counsel for the parents appear at that time and announce that he had been instructed by parents to appear and "proceed in abstentia" at the July 23 hearing.[9] Likewise, neither the parents nor their counsel appeared or contacted the district court on July 24 to explain their absence the preceding day. They waited until August 31 to inform the district court that they claimed they did not know they were required to attend the July 23 pretrial conference.

5. At the hearing on the parents' motion to vacate Father testified that he had attended every hearing prior to the July 23 pretrial conference. He testified that although he was at the March 15 pretrial conference, he and Mother understood that they were not required to attend the July 23 pretrial conference but only the August 27 trial. Father did not testify that his attorney told him he did not have to appear on July 23, only that he understood that the next court date was August 27. He testified that he had a piece of paper on which his counsel had written the August 27 trial date. Although it appears that Father had this paper with him at the hearing, it was not introduced as an exhibit at the

---

conference although the pretrial conference was again continued until December 8, 2011.

**8.** Father and Mother each entered a plea of *nolo contendere* to one felony count of child neglect on May 17, 2013, and received a deferred sentence (Oklahoma County case number CF–2011–2474). "The range of [appellate] review is generally confined to the record presented for corrective process. A well-recognized exception permits an appellate tribunal to take cognizance of those facts occurring during the pendency of an appeal which adversely affect the court's capacity to administer effective relief." *Lawrence v. Cleve-*

*land County Home Loan Auth.*, 1981 OK 28, ¶ 6, 626 P.2d 314, 315.

**9.** 10A.O.S. 1–4–905(A)(5):

When a parent who appears voluntarily or pursuant to notice is directed by the court to personally appear for a subsequent hearing on a specified date, time and location, the failure of that parent to personally appear, or to instruct his or her attorney to proceed in absentia at the trial, shall constitute consent by that parent to termination of his or her parental rights.

hearing and is not included in the record in this appeal.[10]

¶ 6 After hearing the evidence, the district court found "the evidence does not support [the parents position that they were unaware of the July 23 pretrial conference] as the Court advised the parents to be in court on July 23, 2012." The district court also found: "The mother and father in this case claim that they did not know about the July 23rd hearing, however the Court finds that inconsistent with the evidence in that the court specifically notified the parents of the July 23rd hearing and their attorney did appear." During the July 23 proceeding, the district court stated: "the Court has been very specific with the parents repeatedly that they had to be here for pretrial hearings and they were not here today." Based on these findings, the district court concluded the parents had failed to sustain their burden of proving that they did not have notice of the July 23 pretrial conference. In my view, based on these findings, the district court did not abuse his discretion in denying the parents' motion to vacate. Although the parents' argue "quite forcibly that every litigant is entitled to his day in court, [I] know of no rule in civil cases requiring the court to compel the defendant to enjoy that privilege if he chooses, either deliberately or by his negligence, to forego it." *Woodruff v. Moore*, 1938 OK 119, ¶ 8, 182 Okla. 120, 77 P.2d at 63 (affirming default judgment after repeated warnings to defendant). *See also Ross v. Pace*, 2004 OK 13, 87 P.3d 593 (affirming refusal to vacate default judgment after trial court found plaintiff failed to answer request for admissions, was served with motion for summary judgment and given notice of hearing but failed to attend).

¶ 7 Further, the district court's decision overruling the parents' motion to vacate "comes to a court of review clothed with a presumption of correctness. Every fact not disputed by the record must be regarded as supportive of the trial court's ruling." *Willis v. Sequoyah House, Inc.*, 2008 OK 87, ¶ 15, 194 P.3d 1285, 1290 (internal citations omit-

ted). On the critical issue of whether the parents knew they were ordered to appear at the July 23 pretrial conference, the evidence in this record is Father's testimony at the hearing on his motion to vacate that he understood that he only had to appear at the August 27 trial versus the district court's statements on the record during the July 23 proceedings and the hearing on the motion to vacate that it specifically ordered the parents to attend every pretrial conference including the July 23 pretrial conference. The district court's statement that it specifically ordered the parents to attend each pretrial conference is supported by the fact that after the initial June 27, 2011, pretrial conference, the parents did attend the next three pretrial conferences held on October 20, 2011, December 8, 2011, and March 15, 2012. In each of those pretrial conferences, not only was a new pretrial conference date set, but also a new trial date was set. In my view, the presumption that the district court is correct is not overcome by Father's testimony that he left the March 15 pretrial conference "under [the] impression" that his next court date was August 27, because his attorney had written that date on a piece of paper after the conference. "If the question whether there was an abuse depends upon a question of fact pertaining to the grounds for vacating, upon which question there was conflicting evidence, the ordinary rule applies and the presumption is that the finding of fact was consistent with the order." *Woodruff*, 1938 OK 119, ¶ 9, 77 P.2d 62 at 64 (affirming denial of term-time motion to vacate default judgment).

¶ 8 However, as the Majority correctly notes, the box on the form used to document the March 15 pretrial conference confirming the district court's order to appear on July 23 was not checked. I agree with the Majority that when the district court uses a form to document its proceedings, the form should be filled out to conform to what actually transpired. However, in my view, the discrepancy between the form and the district court's firm conviction expressed on the record twice that he ordered the parents to attend the

---

**10.** Father's counsel supported Father's testimony in his argument to the district court but he did not testify. Unsworn statements of counsel do not constitute evidence. *See Willis v. Sequoyah House, Inc.*, 2008 OK 87, ¶ 13, 194 P.3d 1285, 1290.

July 23 pretrial conference is insufficient to overcome the presumption of correctness in the district court's decision to overrule the parents' motion to vacate. That same box was not checked on the form used to document the June 27, October 20, and December 8, 2011, pretrial conferences, yet the parents were able to attend each of the following conferences. The presumption of correctness is certainly not overcome, in my view, by Father's self-serving testimony that he was "under [the] impression" that he did not have to attend the July 23 pretrial conference. And, there is no direct evidence supporting the conclusion that Mother did not know she had been ordered to attend the July 23 pretrial conference. I would affirm the order of the district court denying the parents' motion to vacate.

¶ 9 The second issue raised by the parents in this appeal is a constitutional one. They argue that unspecified "due process rights" were violated when the district court terminated their parental rights for failure to appear at the July 23 pretrial conference. They cite various cases for the proposition that parental rights cannot be terminated in the absence of clear and convincing evidence. They point out that no evidence was presented by the State in support of the grounds for termination during the July 23 proceedings and conclude, therefore, that the Judgment terminating their parental rights failed to comply with Oklahoma law. In my view, this argument does not require reversal of the order appealed.

¶ 10 First, this issue was not raised in the parents' motion to vacate nor presented to the district court at the hearing on that motion. An appellate court will not ordinarily rule on a question of law not decided by the trial court, and I would not do so in this case. See Krosmico v. Pettit, 1998 OK 90, ¶ 22, 968 P.2d 345, 351.

¶ 11 Second, as previously discussed, the parents' appeal of the order denying their motion to vacate is limited to the correctness of the district court's disposition of that motion. The parents' constitutional argument goes to the merits of the Judgment terminating their parental rights. The parents did not preserve their right to appeal the Judgment. See Stites, 1995 OK 69, ¶ 25, 903 P.2d at 302.

¶ 12 Third, the parents' reliance on In re S.B.C., 2002 OK 83, 64 P.3d 1080, is misplaced. S.B.C. cited federal constitutional authority for the proposition that the evidence supporting parental termination produced at trial must be clear and convincing evidence and held that the same level of proof was required on appellate review of the factual basis for termination. In this case, by virtue of the deemed consent provision of section 1–4–905(A)(5) a trial was not required, and, although the district court was satisfied that sufficient evidence existed to warrant termination, no evidence regarding the grounds for termination was necessary. Nothing in the language of section 1–4–905(A)(5) refers to or requires a trial on the merits or an evidentiary hearing on the grounds for termination. "[T]he cardinal rule of statutory construction is to begin with consideration of the language used and courts should not read into a statute exceptions not made by the Legislature." Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n, 1988 OK 117, ¶ 7, 764 P.2d 172, 179. Consequently, I disagree with the holding in In re A.T., 2011 OK CIV APP 81, 262 P.3d 386, relied on by the Majority for the proposition that clear and convincing evidence is still required when parental rights are terminated pursuant to section 1–4–905. Not only is there no such requirement in the statute but also, and by analogy, there is no such requirement imposed where a parent voluntarily consents to termination pursuant to section 1–4–904. All that is required is that the parent's written consent be "accompanied by the judge's certificate that the terms and consequences of the consent were fully explained in detail ... and were fully understood by the parent...." 10A O.S. 2011 1–4–904(B)(1)(a).

¶ 13 For these reasons, I would affirm the order of the district court denying the parents' motion to vacate and, therefore, respectfully dissent.