OSCN Found Document:IN THE MATTER OF E.D.J.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF E.D.J.
2015 OK CIV APP 41
348 P.3d 1098
Case Number: 112807
Decided: 12/19/2014
Mandate Issued: 05/07/2015
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2015 OK CIV APP 41, 348 P.3d 1098

 

IN THE MATTER OF E.D.J. and D.J.H., Deprived Children:

JAMES HUBBARD and MISTY JOHNSON, Appellants,
v.
STATE OF 
OKLAHOMA, Appellee.

APPEAL FROM THE DISTRICT COURT OF
GRADY COUNTY, OKLAHOMA
HONORABLE JOHN HERNDON, JUDGE

REVERSED AND REMANDED

Spencer Schroeder, Chickasha, Oklahoma, for Appellant Father,
Scott Biggs, 
Chickasha, Oklahoma, for Appellant Mother,
Amanda Mullins, Chickasha, 
Oklahoma, for Appellee State of Oklahoma,
Angela Caywood Jones, Chickasha, 
Oklahoma, for the Children.


Larry Joplin, Presiding Judge:
¶1 Appellants, Mother and Father (Parents) of the alleged deprived children, 
seek review of the trial court's order granting the default, consent termination 
of their parental rights entered on February 19, 2014. Parents raise four 
propositions of error in their appeal. First, Parents allege the court erred in 
granting the State's requested default termination for Parents' failure to 
appear for a pretrial hearing that had already been conducted and completed in 
absentia of the Parents. Second, Parents allege the trial court erred granting a 
default termination without a hearing to determine if there was clear and 
convincing evidence that termination was in the children's best interests. 
Third, Parents allege the trial court erred terminating parental rights, because 
Parents' failure to appear was the result of unavoidable misfortune. Finally, 
Parents allege the court erred in terminating parental rights during a discovery 
hearing, when Parents' termination hearing was not scheduled to occur until 
three weeks later.
¶2 Parents are alleged to be methamphetamine users whose drug usage resulted 
in the deprived status of their two children, E.J., born on August 28, 2010 and 
D.H., born on August 28, 2011. The State alleges Parents have failed to correct 
their drug usage and filed a petition to terminate Parents' parental rights on 
February 13, 2013. The State filed an amended petition on October 7, 2013 and a 
second amended petition on December 17, 2013. A pretrial conference was 
scheduled on December 31, 2013 and a follow-up pretrial conference was set for 
January 7, 2014. The January 7th conference had been set to finalize discovery 
issues Parents' attorneys had raised with respect to obtaining a complete copy 
of the D.H.S. (Department of Human Services) file. The trial on the termination 
petition was scheduled to occur on January 27, 2014.
¶3 The January 7th follow-up pretrial conference began as scheduled, 
attorneys appeared on behalf of both Mother and Father to address the completion 
of discovery. However, neither Mother nor Father appeared at the January 7th 
pretrial, citing a cut in their electrical line that prevented their alarm clock 
from operating to awaken them for the pretrial conference. Due to Parents' 
failure to appear, State's counsel moved for a default termination at the 
January 7th proceeding. In response to the State's motion, the trial court found 
Parents' had been told to appear and had failed to do so, the court then said it 
would turn the January 7th pretrial into a "termination docket" and terminate 
the Parents' parental rights by consent. Without taking any testimony or 
evidence, the trial court also made a finding that termination was in the 
children's best interests, the parents had failed to correct the conditions 
leading to the children's deprived status and had not contributed to the 
children's support during their placement in foster care.
¶4 The trial court remarked, and State's counsel agreed, Parents had been 
instructed at the December 31, 2013 pretrial conference to appear at the January 
7, 2014 pretrial or lose their parental rights. Parents do not deny they were 
told to appear on January 7th. The December 31, 2013 transcript offers no 
indication Parents were instructed to appear on January 7th and the proceeding 
was adjourned without comment about Parents' need to appear at the follow-up 
pretrial. However, the court minute from December 31st contains a handwritten 
interlineation at the bottom left corner of the page which states, "failure to 
appear will result in termination of parental rights[.]" The signatures of both 
parents appear at the bottom of the page on the opposite side from the 
handwritten interlineation.
¶5 The written order terminating Parents' parental rights was issued on 
February 19, 2014. Father sought a motion to vacate the termination order the 
next day and Mother joined in the motion to vacate on February 28, 2014. The 
trial court issued the appealed from order denying Parents' motions to vacate 
the termination of their parental rights on April 22, 2014. Parents appeal the 
denial of the motion to vacate.
¶6 The appellate court will review the trial court's denial of a motion to 
vacate a judgment for abuse of the trial court's discretion. In re J.C., 
2010 OK CIV APP 138, ¶ 7, 244 P.3d 793, 795, citing Patel 
v. OMH Medical Center, Inc., 1999 
OK 33, ¶ 20, 987 P.2d 1185, 
1194. "Abuse occurs if the trial court exercises its discretion to an end or 
purpose not justified by, and clearly against, reason and evidence, or if it 
errs with respect to a pure, unmixed question of law." In re J.C., 244 
P.3d at 795 (citations omitted). Legal errors are reviewed under a de 
novo standard. In re W.A., 2004 OK CIV APP 50, ¶ 4, 91 P.3d 682, 683. "In passing upon 
a claim that the procedure used in a proceeding to terminate parental rights 
resulted in a denial of procedural due process, we review the issue de 
novo." In the Matter of A.M. & R.W., 2000 OK 82, ¶ 6, 13 P.3d 484, 487; see also In the 
Matter of T.J., 2012 OK CIV APP 
86, ¶ 18, 286 P.3d 659, 664 
(quoting Matter of A.M. & R.W.). "De novo review requires an 
independent, non-deferential re-examination of another tribunal's legal 
rulings." Matter of A.M. & R.W., 13 P.3d at 487.
¶7 When the appellate court "reviews a trial court order refusing to vacate a 
default judgment, [the appellate court] will consider the following factors:

 
 1) default judgments are not favored; 2) vacation of a default judgment 
 is different from vacation of a judgment where the parties have had at least 
 one opportunity to be heard on the merits; 3) judicial discretion to vacate 
 a default judgment should always be exercised so as to promote the ends of 
 justice; 4) a much stronger showing of abuse of discretion must be made 
 where a judgment has been set aside than where it has 
not.
Ferguson [Enter., Inc. v. H. Webb Enter., 2000 OK 78, ¶ 5], 13 P.3d at 482. We 
must also take into account 'whether substantial hardship would result from 
granting or refusing to grant the motion to vacate.' Id." In re 
H.R.T., 2013 OK CIV APP 114, 
¶ 15, ___ P.3d ___.
¶8 The trial court's order states notice of the January 7, 2014 hearing was 
given to Parents, "as well as the consequences due to their failure to appear, 
of what would occur." The order went on to say that "[d]ue [p]rocess was 
observed[.] Both parties had notice and an opportunity to be heard and were not 
present. Notice is therefore not at issue." On appeal, Parents argue their 
fundamental liberty interest in parenting their children and the substantive due 
process rights to protect that interest were impermissibly taken from them when 
the trial court deprived them of due process protections and their right to 
trial, impermissibly turning a pretrial conference into a termination 
hearing.
¶9 Because parents have a constitutionally protected liberty interest in the 
legal bond with their children, we analyze a due process challenge to determine 
the procedural protections required before that bond can be broken. See In re 
A.M. & R.W., ¶¶ 8-9, 13 P.3d at 487 (applying the test enunciated in 
Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 
L.Ed.2d 18 (1976)). "In the context of a proceeding to terminate parental 
rights, the essence of procedural due process is a 'meaningful and fair 
opportunity to defend.'" Id. ¶ 9, 13 P.3d at 487; State ex rel. 
A.W., 2011 OK CIV APP 27, 250 P.3d 343. The question in this 
case is whether the Parents' failure to appear at the January 7th pretrial 
proceeding provided the trial court with adequate grounds to grant the default 
termination order.
¶10 The Oklahoma Legislature has set forth specific notice requirements for a 
hearing to terminate parental rights, in order to protect the parent's due 
process right to a hearing prior to any deprivation of the fundamental right of 
a parent to the care, custody and control of his/her child.

 
 A. 1. Prior to a hearing on the petition or motion for termination of 
 parental rights, notice of the date, time, and place of the hearing and a 
 copy of the petition or motion to terminate parental rights shall be served 
 upon the parent who is the subject of the termination proceeding by personal 
 delivery, by certified mail, or by publication as provided for in Section 
 1-4-304 of this title.
 2. The notice shall contain the following or substantially similar 
 language: "FAILURE TO PERSONALLY APPEAR AT THIS HEARING CONSTITUTES CONSENT 
 TO THE TERMINATION OF YOUR PARENTAL RIGHTS TO THIS CHILD OR THESE CHILDREN. 
 IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL 
 RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION OR MOTION 
 ATTACHED TO THIS NOTICE."
 3. Notice shall be served upon the parent not less than fifteen (15) 
 calendar days prior to the hearing.
 4. Any actual notice of termination of parental rights shall state that 
 the duty of the parent to support his or her minor child will not be 
 terminated except for adoption as provided by paragraph 3 of subsection B of 
 Section 1-4-906 of this title.
 5. The failure of a parent who has been served with notice under this 
 section to personally appear at the hearing shall constitute consent to the 
 termination of parental rights by the parent given notice. When a parent who 
 appears voluntarily or pursuant to notice is directed by the court to 
 personally appear for a subsequent hearing on a specified date, time and 
 location, the failure of that parent to personally appear, or to instruct 
 his or her attorney to proceed in absentia at the trial, shall constitute 
 consent by that parent to termination of his or her parental 
 rights.
10A O.S. Supp.2009 §1-4-905(A)(1)-(3).
¶11 This case presents issues similar to those presented in In the Matter 
of H.R.T., 2013 OK CIV APP 
114, in which the court examined whether the parents' appearance at several 
previous hearings, with an absence from a pretrial hearing date, provided 
adequate grounds for a default termination of the parents' parental rights. The 
H.R.T. court found the pretrial absence did not provide grounds for 
termination, due in large part to the fact the parents' attorney was present and 
could have conducted the pretrial hearing to adequately represent the parents' 
interests and proceed to trial without delay. In re H.R.T., 2013 OK CIV APP 114, ¶¶ 17 and 
23.
¶12 In the present case as in H.R.T., Parents had both appeared and 
failed to appear at previous court dates and Parents' attorneys were present at 
the January 7th pretrial hearing. The attorneys were in the process of 
addressing Parents' discovery requests upon D.H.S. when the court entertained 
the State's motion for termination by default. The trial court went on to state 
that, based on Parents' failure to appear, the court would treat the pretrial 
hearing as a termination docket. The court granted the State's default 
termination request and then made an additional finding of best interests of the 
children. The best interests finding appears from the record to be based on the 
State's representation, without the presentation of any evidence or testimony, 
that it would continue to seek termination and that Parents had failed to 
correct the conditions leading to the deprived status of the children.
¶13 Parents' attorneys repeatedly stressed the fact the pretrial was a 
discovery issues hearing date at which Parents' presence was not necessary to 
address discovery and the termination hearing was not scheduled for almost three 
more weeks. Parents' counsel also argued termination cases are civil cases and 
numerous civil cases are dealt with by counsel without the parties being 
present. And the short, handwritten script at the bottom of the court minute 
stating "failure to appear would result in termination of parental rights" did 
not pass constitutional muster, given the fundamental right Mother and Father 
had to the parentage of their two children.
¶14 As outlined in Ferguson and discussed in H.R.T., default 
judgments are disfavored. Parents in this case have not had an opportunity to 
present their case on the merits, judicial discretion should be exercised to 
promote justice, and a lesser showing of abuse of discretion is required when a 
judgment has not been set aside. As a result, we find that failure to appear at 
the pretrial hearing, when their attorneys were present and able to represent 
their interests and no delay in the proceedings would have been necessary, 
should not have resulted in a default judgment against Parents.
¶15 In addition, the trial court's finding that termination of Parents' 
parental rights was in the children's best interests must also be reversed. This 
decision appears to be based on a brief statement or representation by State's 
counsel, and it cannot be determined from the record available what evidence the 
court based the ruling upon, since there were no exhibits or testimony in the 
record showing the State met its burden by clear and convincing evidence. The 
State should be given the opportunity to present its case by clear and 
convincing evidence and Parents should be given the opportunity to fully respond 
to and defend against the State's allegations. The pretrial should not have been 
summarily converted into a termination hearing.
¶16 As recounted in H.R.T.,

 
 'The integrity of the family unit and preservation of the parent-child 
 relationship command the highest protection in our society.' In re 
 M.H., 2010 OK CIV APP 
 136, ¶ 12, 245 P.3d 
 1266, 1269. 'Because of the fundamental right which parents have in the 
 custody of their children and the gravity of the sanction imposed by 
 termination, there is no substitute to fully complying with all procedural 
 safeguards.' Id. Termination of a parent's 'parental rights is too 
 serious to permit procedural shortcuts.' Id. at [¶] 13, 245 P.3d at 
 1269.
In the Matter of H.R.T., 2013 OK CIV APP 114, ¶ 22.
¶17 The only remaining issue in Parents' appeal brief is whether or not the 
court abused its discretion by finding no unavoidable casualty occurred when 
Parents' lost their electricity and their alarm clock did not sound to awaken 
them for the pretrial hearing. This is an inquiry in which the court considered 
the validity of Parents' excuse for missing the hearing at which their rights 
were terminated under 10A O.S. Supp.2009 1-4-905(B). In the instant case, this 
provision should not have been utilized, because the court's termination order 
developed out of a pretrial hearing in violation of the Parents' due process. 
Whether the Parents had a permissible excuse for missing the January 7th pretrial may be relevant in terms of any sanctions the 
trial court might have chosen to impose. However, terminating parental rights at 
the pretrial, where Parents' attorneys were present to conduct the scheduled 
business before the court and no delay in the trial schedule would have been 
necessary, marked a deprivation of Parents' due process; and inquiry into the 
reason for Parents' absence is not determinative of this due process 
question.
¶18 The trial court's denial of Parents' motion to vacate the default 
judgment terminating their parental rights constituted an abuse of discretion. 
The order of the trial court is REVERSED and this cause REMANDED.

HETHERINGTON, V.C.J., and BUETTNER, J., concur.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2004 OK CIV APP 50, 91 P.3d 682, IN THE MATTER OF W.A.
Discussed
 2010 OK CIV APP 136, 245 P.3d 1266, IN THE MATTER OF M.H.
Discussed
 2010 OK CIV APP 138, 244 P.3d 793, IN THE MATTER OF J.C.
Discussed
 2011 OK CIV APP 27, 250 P.3d 343, IN THE MATTER OF THE STATE IN THE INTEREST OF A.W. and M.W.
Discussed
 2012 OK CIV APP 86, 286 P.3d 659, IN THE MATTER OF T.J.
Discussed
 2013 OK CIV APP 114, IN THE MATTER OF H.R.T.
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2000 OK 78, 13 P.3d 480, 71 OBJ 2590, FERGUSON ENTERPRISES, INC. v. H. WEBB ENTERPRISES, INC.
Cited
 2000 OK 82, 13 P.3d 484, 71 OBJ 2668, IN THE MATTER OF A.M. & R.W.
Discussed
 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.
Discussed